INTERNATIONAL & GREAT NORTHERN RAILROAD
COMPANY V. ABRAM ARIAS.

No. 566.

1. **Railway Company—Section Hand—Assumed Risk.**—It is not the duty of a railway company to notify its section hands of the coming of special trains, as danger from this source is one of the risks assumed by such employes.

2. **Same—New Hand—Open Danger.**—Where the danger incident to an employment, such as risks to section men from constantly passing trains, are open and palpable, it is not incumbent on the master to warn the servant of them, even though the servant be inexperienced and unacquainted with the dangers of the service.

3. **Negligence—Rate of Speed of Trains.**—Where there is nothing in the evidence showing that it was negligence to run a freight train around a curve at twenty-five to thirty miles an hour, it can not be declared negligence merely as matter of law.

4. **Verdict—Negative Evidence—Train Signals.**—A verdict for injuries resulting from negligent failure to give signals can not be sustained upon the merely negative testimony of plaintiff alone that he did not hear the train whistle blow, when there is positive evidence by several witnesses that it did blow at the proper time.

5. **Same—Insufficient Evidence—Setting Aside Verdict.**—When the evidence adduced is not reasonably sufficient, under all the circumstances of the case, to satisfy the mind of the truth of the allegation, or the verdict is clearly contrary to the evidence, it is the duty of the appellate court to set the verdict aside upon objection duly urged thereto.

6. **Pleading and Proof—Negligence Not Alleged.**—Where the petition of plaintiff, a section hand, asked a recovery on the ground of negligence based alone upon the negligent acts of those in charge of a freight train by which he was struck, he can not recover upon proof that the section foreman in charge over him was responsible for the dangerous position which he (plaintiff) occupied at the time of the injuries.

APPEAL from Webb. Tried below before Hon. A. L. McLANE.

*Barnard & McGown,* for appellant.—1. In accepting employment as a section hand Arias assumed all risks incident to his employment, including that requiring section hands to yield the right of way to trains, as required by the rules of the company. Railway v. Hester, 64 Texas, 403; same case, 72 Texas, 41; Watson v. Railway, 58 Texas, 434; Railway v. Callbreath, 66 Texas, 528; Railway v. Dillard, 70 Texas, 63; Railway v. Lemon, 83 Texas, 145; Railway v. Mitchell, 72 Texas, 612; Railway v. Walts, 63 Texas, 549.

2. If in protecting himself against the risks of his employment he errs in judgment, the company is not responsible. Railway v. Hester, 64 Texas, 403; Railway v. Tarver, 72 Texas, 311; Railway v. Wallace, 76 Texas, 636; Dallas v. Railway, 61 Texas, 201; Railway v. Faber, 63 Texas, 344; Railway v. Crowder, 63 Texas, 503.

*C. C. Pierce, J. O. Nicholson,* and *Dodd & Mullally,* for appellee.

1. By accepting service for the company, Arias did not assume the risk of any dangers which were not apparent to a man of ordinary prudence. He did not assume risks from appellant's manner of running its trains which made his employment more hazardous than was reasonable. Railway v. Taylor, 23 Am. St. Rep., 322.

2. Arias was a man without experience as a section hand, and did not know or understand the hazards of that kind of work. It was the duty of Wiley, the vice-principal, to have warned him of such danger, and to have given him suitable instructions to enable him to understand his situation and protect himself. Railway v. Hinzie, 18 S. W. Rep., 683; Railway v. Hall, 15 S. W. Rep., 109, 110; Railway v. Williams, 12 S. W. Rep., 835–837; 3 Wood's Ry. Law, pp. 1487, 1488.

3. It was the duty of the railroad company acting by its vice-principal, Wiley, to have warned Arias of the dangers incident to his work from the running of the trains without notice to section men. Railway v. Hinzie, 18 S. W. Rep., 683; Railway v. Hall, 15 S. W. Rep., 109, 110; Railway v. Williams, 12 S. W. Rep., 835–837; Wormell v. Railway, 1 Am. St. Rep., 325; Wagner v. Chemical Co., 30 Am. St. Rep., 747, and note, p. 750; 2 Wood's Ry. Law, p. 1262; 3 Id., pp. 1487, 1488.

FLY, ASSOCIATE JUSTICE.—This suit grew out of a collision between a freight train belonging to appellant and a hand car on which appellee, who was a section hand in the employ of appellant, had been riding to his place of employment. The ground for recovery set out

in the petition was the negligence of appellant in failing to give notice beforehand to appellee of the coming of the train, in running at a high rate of speed, and in failing to give signals of its approach by bell or whistle. The case was tried before a jury, and resulted in a verdict for $4000, upon which judgment was rendered.

When appellee entered the service of appellant as a section hand, he assumed all the risks and hazards incident to his employment. One of those risks was that arising from the passing of trains at any time along the railroad track. It is not the duty of a railroad company to notify its section hands of the coming of special trains. Such a requirement would be unreasonable, and would entail upon railroad companies duties that would seriously interfere with their business, and be productive of no good to any one. At times when men are at work at a distance from stations, it would practically defeat expeditious handling of special trains, however necessary they might be for efficient service in the carrying trade. Appellee had no grounds to expect that he would receive special notices of the arrival and departure of extra trains. One of the risks he assumed by the very nature of his employment was, that trains might pass at any moment. There is a reciprocal duty existing between the railroad company and the employe at work on the track, the one being that the railroad company must give signals where the nature of the locality requires, and in case there is danger of injuring the employe, to use diligence to prevent it, and the other being that the employe must keep an outlook and seek safety from any trains that may be passing. It is urged that appellee was a new hand and not acquainted with the business in which he was engaged, or the dangers and risks incident thereto, and that he should have been warned in regard to them. Where the danger attending an employment is open and palpable, it is not incumbent on the master to warn his servant of them. Any one who ever lived in the vicinity of a railroad, it would seem, should take cognizance of the fact that trains may and do pass at all hours of the day, and that circumspection is necessary at all times when on the track. Wood Mast. and Serv., sec. 349; Watson v. Railway, 58 Texas, 439; Railway v. Hester, 64 Texas, 401.

This principle of law is expressed in a rule, testified to by Aiken, who swore, that "hand cars are required to keep out of the way of all freight trains, and freight trains are required to blow whistles at curves and keep a sharp lookout for section men." It is the duty of the section men to keep a watch for passing trains and to use care in protecting themselves from danger. They are charged with notice that trains must have the right of way, and can not be delayed by hand cars on the track. There are dangers inseparable from their vocation, and it is right to presume that they have followed it with a full knowledge and an assumption of the risks. The railroad company can not be held responsible to them for injuries received, unless it is proved that the risks were increased by its negligence.

It was shown that the train was moving at the rate of from twenty-five to thirty-two miles an hour when it rounded the curve, and it is claimed by appellee that this rate of speed at a curve was negligence in itself. There is nothing in the evidence that shows that it was negligence to turn a curve at that rate of speed, and we can not as a matter of law say that it was negligence. The testimony shows that the train at that place could not be stopped in a less distance than from 500 to 1000 yards, but there is nothing to indicate the ordinary distance in which a freight train can be stopped. In other words, the evidence fails to show that it was negligent to run the train at the speed that it was moving at the time and place of the collision.

It was shown to be a rule of the company that special trains should give signals "at curves," and several witnesses swore that the signals were given about half a mile before reaching the curve, and also as the train rounded the curve. The section foreman who was on the hand car with appellee swore that he heard the whistle sounded when the train men discerned the hand car, and the evidence of the engineer showed that he discerned the hand car as the locomotive rounded the curve. The only evidence that was introduced to show that the whistle was not sounded at the curve was that of appellee, who swore that he did not hear it. Such a statement, with no accompanying facts to show a probability that the witness would have heard the signals had they been given, is merely negative, and not of such a character as to form testimony upon which to base a verdict. There was no effort to show by any circumstance attending the transaction that appellee would probably have heard the signals, but on the other hand, it is shown that the section men were riding on a hand car which would create more or less noise in moving on the rails. The class of testimony under consideration becomes evidence of the fact in issue or not, according to the circumstances surrounding the author of it. Menard v. Railway (Mass.), 23 N. E. Rep., 214; Hubbard v. Railway (Mass.), 34 N. E. Rep., 459. The Minnesota Supreme Court, discussing this question, says: "The mere statement by a witness that he did not hear it, would of itself be no evidence that the bell was not rung." Moran v. Railway, 50 N. W. Rep., 930. It must be kept constantly in view that the burden rested upon appellee to show that appellant was guilty of negligence in causing the injury to him, and having alleged that one ground of the negligence was the failure to give the signals, it was incumbent on him to introduce evidence not only that he did not hear the signals, but that they were not given. That he did not hear the signals was a mere circumstance which was or was not sufficient evidence upon which to base a verdict according as it was supported by other circumstances tending to show that the signals were not given.

We are left in uncertainity by the evidence as to the conditions surrounding appellee at the time it is said the signals were given. He may have been in a position in which it was utterly impossible for him

to have heard, either on account of the rattle of the hand car or conversation that may have been carried on by the section men. The circumstances detailed should have affirmatively shown at least a probability that the signals would have been heard had they been given. Unaided by such circumstances, there was no testimony to override the positive facts sworn to by a number of witnesses, and which facts are not inconsistent with any of the details of the case. There are cases in which negative testimony might in the face of the positive testimony sustain a verdict, but in such cases, not only must the comparative credibility of the witnesses be placed in the balance, but there must be something by which the means of knowledge can be weighed. Where such testimony as we are considering is relied on for a verdict, it devolves on the party introducing it to show that he was where he would probably have heard the bell, had it been rung, or the whistle, had it been sounded. Pence v. Railway (Iowa), 44 N. W. Rep., 686.

It is with reluctance that the verdict of a jury is ever disturbed by an appellate court; but when it is obvious that the evidence preponderates to such an extent against a verdict as to render it practically unsupported by it, the court will set it aside.

In the case of Railway v. Schmidt, 61 Texas, 285, it is said, that "while the verdict of a jury is entitled to great weight when rendered on evidence reasonably sufficient to sustain it, yet when rendered contrary to evidence, or against the great preponderance of the evidence, and it is most likely that injustice has been done, trial courts should not hesitate to grant new trials. This court does not exercise the same latitude of discretion in this respect as does the trial court, but when it is manifest that a verdict is clearly contrary to the evidence, it has never felt wanting in power to reverse a judgment based on such a verdict." Again, in Chandler v. Meckling, 22 Texas, 42, it is said: "When it is clear that the evidence adduced is not reasonably sufficient (under all the circumstances of the case) to satisfy the mind of the truth of the allegations, then the verdict should be set aside, on the proper motion being made. When it is made to appear, or is obvious to this court, that such rule has not been observed by the District Court, it then becomes a proper subject of revision by the Supreme Court." There are other authorities to the same effect. Willis v. Lewis, 28 Texas, 185; Railway v. Hester, 64 Texas, 403, and 72 Texas, 41; Railway v. Lee, 69 Texas, 556; Zapp v. Michaelis, 58 Texas, 275; Block v. Sweeny, 63 Texas, 419; Railway v. Dillard, 70 Texas, 62.

The charge of the court is not criticised by appellant, and is an excellent presentation of the issues in the case to the jury, and while the special charges given for appellee did not add any strength to the charge of the court, yet we are of the opinion that they are not open to the attacks made upon them by appellant.

There was no error in refusing special charge number 1 asked by appellant. The question of contributory negligence on the part of appellee was fairly submitted to the jury by the charge of the court and the requested charges of appellant, and we are not prepared to hold that there is no testimony that justified the jury in finding that appellee was not guilty of contributory negligence. For the reason that the testimony fails to show negligence upon the part of appellant, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 13, 1895.