HORNBECK v. BARKER, Sheriff, et al. (No. 650.)

(Court of Civil Appeals of Texas. El Paso. Jan. 25, 1917. Rehearing Denied Feb. 15, 1917.)

1. APPEAL AND ERROR ☞237(3) — REVIEW — PRESERVATION OF QUESTIONS.

Failure to request a peremptory charge in favor of plaintiff does not preclude the consideration of assignments of error that the undisputed evidence conclusively shows a state of facts entitling plaintiff to recover.

2. APPEAL AND ERROR ☞560 — REVIEW — STATEMENT OF FACTS — FORM AND SUFFICIENCY.

Under Rev. St. 1911, art. 2070, requiring statement of facts on appeal to be in narrative form, a statement of facts covering about 30 pages of record, and containing less than one-half page of evidence in the form of questions and answers, held not to show such flagrant violation of statute and rules as to exclude statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2490–2493.]

3. APPEAL AND ERROR ☞562 — REVIEW — STATEMENT OF FACTS — FORM AND SUFFICIENCY.

Under district and county court rules 72–76 (142 S. W. xxii), it is unnecessary to copy deeds and acknowledgments in full in the statement of facts, where there is no question as to the validity or correctness in form or record of such instruments.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2495–2499.]

4. TRUSTS ☞89(2)—RESULTING TRUSTS—EVIDENCE—SUFFICIENCY.

In action to enjoin execution sale of lands, evidence held to show that the execution defendant had no interest in the lands, but purchased them merely as agent for plaintiff, who advanced the entire purchase price, a resulting trust in his favor being created, notwithstanding that record title was in his agent.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 135.]

5. EVIDENCE ☞586(3, 4) — SUFFICIENCY — NEGATIVE TESTIMONY.

Although there are cases in which negative testimony might sustain a verdict against posi-

tive testimony, yet in such cases not only must the comparative credibility of the witnesses be placed in the balance, but there must be something by which the means of knowledge can be weighed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2434, 2435.]

6. TRUSTS ☞84 — RESULTING TRUSTS — RIGHTS OF CESTUI QUE TRUST AS AGAINST JUDGMENT CREDITOR AND TRUSTEE.

Where plaintiff advanced to his agent money with which to purchase land, and such agent took title in his own name and gave his personal notes for the unpaid purchase money, which notes, however, were paid by plaintiff before defendant bank loaned money to such agent, a resulting trust in plaintiff was created to the extent of the entire interest in the property, and such properties were exempt from defendant's statutory lien under levy of execution against plaintiff's agent; such trusts not being within the operation of the statutes of registration.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 125–127.]

7. EXECUTION ☞40 — PROPERTY LIABLE — RESULTING TRUSTS—ENLARGEMENT.

Where plaintiff furnished money for purchase of lands to his agent, who took title in his own name and gave notes secured by vendor's lien, which notes were subsequently paid by plaintiff, *held*, the resulting trust in plaintiff was enlarged by discharge of vendor's lien, and an execution creditor of plaintiff's agent could not claim that plaintiff's resulting trust was in no greater portion of the property than the ratio the cash consideration bore to the entire purchase price.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 50, 89–94.]

8. EVIDENCE ☞441(8)—ADMISSIBILITY.

Where plaintiff furnished money to agent with which to purchase lands, and agent took title in his own name, in an action by plaintiff to restrain execution sale by creditor of his agent, parol evidence was admissible to show the facts leading up to and constituting the entire transaction.

Error from District Court, Pecos County; Joseph Jones, Judge.

Suit for injunction by F. A. Hornbeck against D. S. Barker, Sheriff, and others, to enjoin execution sale. Judgment for defendants, and plaintiff brings error. Reversed and rendered.

Williams & Jackson, of Ft. Stockton, for plaintiff in error. Hadden & Smith, of Ft. Stockton, for defendants in error.

WALTHALL, J. Plaintiff in error filed this suit in the district court of Pecos county to enjoin the sale of certain real estate levied on under execution issued out of the county court of that county in a suit wherein the First State Bank of Ft. Stockton was plaintiff and John C. Firth was defendant. The titles to the real estate stood on the records in Pecos county in the name of said Firth. Attachment was issued out of the county court and levied on said land before trial in the suit of the bank against Firth. The lands were in two parcels, lots 1 to 6, block 16, being purchased July 5, 1910, and block 8 being purchased June 22, 1910. A part of the con-

sideration in each purchase was paid in money, and the balance evidenced by notes executed by Firth. On September 29, 1910, Firth conveyed all of the lands to F. A. Hornbeck, but the deeds were not filed for record until January 27, 1915, which was after execution had been issued and levied on the lands in the case of the bank against Firth.

Hornbeck in this suit alleged that Firth purchased the property for him and with his money and took the deeds in his (Firth's) name. Temporary injunction was granted by the district judge.

The case was submitted to the jury on special issues in two groups, having reference to the two purchases, and on the answers to the issues the court rendered judgment denying permanent injunction and dissolving the temporary injunction. The issues submitted and the answers of the jury are as follows:

### Group One.

(1) Was J. C. Firth acting as the agent of F. A. Hornbeck when he purchased lots 1 to 6 in block 16 from James Rooney, Herman H. Butz, and W. P. Rooney? Answer "Yes" or "No." To this issue the jury answered "No."

(2) Did said Firth make the aforesaid lots under an agreement with Hornbeck that he was acquiring the same for him? Answer this question "Yes" or "No." The jury answered "No."

(3) Was the consideration for the purchase of said lots paid with money furnished by or belonging to Hornbeck? Answer "Yes" or "No." The jury answered "No."

### Group Two.

(4) Was J. C. Firth acting as the agent of F. A. Hornbeck in the purchase of block 8, conveyed by John R. Nasworthy to said Firth? Answer "Yes" or "No." Answer: No.

(5) Did J. C. Firth make the purchase of said block 8 under an agreement with Hornbeck that he was acquiring the same for Hornbeck? Answer "Yes" or "No." Answer: No.

(6) Was the consideration for the purchase of said block 8, paid with money furnished by or belonging to Hornbeck? Answer "Yes" or "No." Answer: No.

Appellant presents seven assignments of error, with appropriate propositions, in which it is insisted that the verdict of the jury is not supported by the evidence, and for that reason the court should have granted his motion for a new trial. It is contended that the evidence is conclusive and undisputed that Firth was acting as agent for Hornbeck in the purchase of the two properties and with Hornbeck's money under an agreement with Hornbeck that he was acquiring same for him (Hornbeck), that he did acquire same for him, and that the evidence showing these facts is undisputed and conclusive. Plaintiff did not object to the charge submitting the case to the jury on special issues, nor request a peremptory charge, and defendants in error object to a consideration of the assignments on the grounds stated in the assignments because of the failure to request a general charge in his favor. We are referred to Gilbert v. Fuhrman, 182 S. W. 51, and Railway

Co. v. Wheat, 173 S. W. 977, as sustaining the contention.

[1] We will not discuss the two cases referred to, but content ourselves with holding that neither sustain the objection made. Defendant in error filed a motion to strike out the statement of facts on the ground that the statement is made up partly in narrative form and partly in questions and answers.

[2, 3] The statement of facts cover about 30 pages of the record. The questions and answers complained of cover less than one-half page. Article 2070, R. S., requires the statement to be in narrative form. A portion of the evidence of a witness is in narrative form. The questions and answers copied do not show such flagrant violation of the statute and rules as to exclude the statement of facts. The motion is overruled. We might suggest, however, that under rules 72 to 76 for district and county courts (142 S. W. xxii) it was unnecessary to copy the deeds and their acknowledgments in full, as there was no question made as to the validity or correctness in their form or the record of them.

A discussion of the assignments requires a full synopsis of the evidence. Plaintiff in error introduced a deed duly acknowledged of date July 5, 1910, from grantors, Rooney, Butz, and Rooney, conveying to Firth lots 1 to 6, block 16, town of Ft. Stockton, consideration $1,250, of which $500 paid in cash by Firth, balance in vendor's lien notes of $250 each, due in 6, 12, and 18 months, each signed and delivered by Firth, deed duly acknowledged of date June 22, 1910, from Nasworthy and wife, conveying to Firth block 8, town of Ft. Stockton, consideration $1,100 cash paid by Firth, and two notes each for $1,100, executed by Firth and due in 12 and 18 months, retaining vendor liens. Hornbeck testified: Residence, Kansas City, Mo.; occupation, selling or handling lands for self and others; knew Firth; was his brother-in-law; Firth went to Ft. Stockton and in the real estate business at witness' suggestion; threw him all business he could; Firth frequently recommended to witness lands as being desirable to purchase, and acted as witness' agent in the purchase of several pieces of land in Ft. Stockton; witness instructed Firth to purchase the lands described in the two deeds, stating the terms as in the deeds; instructed Firth by telegram and letter in the two purchases; produced true copies of letters and telegrams on his files; originals sent Firth and could not be shown; was in Stockton and talked with Firth regarding making these purchases, and had a verbal understanding before purchases were made. Witness and Wm. New are one and the same person. Used name of New for convenience. Firth had no right or title in or to either of the properties, and did not pay any part of the purchase money. Letters marked "9" and "10," addressed to "Fritz" and signed "Jack," are from Firth to witness. Letter marked

"11," to Miss Jean Davidson, is for witness. She was witness' secretary. Witness had some written correspondence with Firth regarding taking the titles in his name and signing notes for part of the purchase price, but was unable to find the originals or copies, except a copy of letter July 1, 1910, produced instructing to take lots in Draper's name. Witness made first cash payment on purchases from Nasworthy and from Rooney, Butz, and Rooney by draft drawn on witness by Firth on July 21, 1910. Draft was made through the Stockton bank and the First National Bank of Kansas City. Witness produced the draft, which was for $2,200, and said it included the purchase price of other property as shown in Exhibit. Witness stated that he paid to the Ft. Stockton bank all the money due on all of the notes given by Firth in part payment for the purchase of the properties and attached to deposition the correspondence. Firth never had any real right, claim, or interest in the property, and Firth conveyed the property to witness. Witness did not pay Firth $1 for the conveyances. Witness still owns the properties; learned of the levy of execution through notice made by sheriff mailed to Firth.

Appellant produced and read in evidence a number of letters and telegrams—one of date May 26, 1910, from appellant to Firth, instructing him to buy the six lots at $1,250, taking title in Firth; letter June 13th from appellant to Firth, confirming wire of same date saying, "Close option in your name block eight. Have Williams examine abstract block sixteen;" letter July 1, 1910, from appellant to Firth instructing to send everything to Miss Davidson who will forward to appellant, and instructing:

"* * * If you have closed on the lots in block 8 and 16 in Draper's name have Judge Williams take deed back from Draper to me, signed by his wife, or perhaps you had better leave the grantee in the deed blank as I may wish to have somebody else hold title. These deeds from Draper are important for if anything should happen to him I could put them on record; savy?"

Appellant read in evidence copies of telegrams:

"Kansas City, Mo. June 8th, 1910. J. C. Firth, Ft. Stockton, Texas: Offer twenty-five hundred block eight. Wm. New."

"Kansas City, Mo., June 16th, 1910. J. C. Firth, Ft. Stockton, Texas. Did you contract block eight? Wm. New."

"Kansas City, Mo. June 13th, 1910. J. C. Firth, Ft. Stockton, Texas. Close option in your name block eight. Have Williams examine abstract block 16. Wm. New."

"Ft. Stockton, Texas, June 7th, 1910. Wm. New, 3525 Gilliam Road, Kansas City, Mo. Block eight held at thirty-five hundred one third cash balance twelve and eighteen months. Have abstract on six lots in block sixteen. Shall mail it you or have it examined here? Answer. J. C. Firth."

Notation on above in pencil:

"I used New's name so public would not know who was buying or negotiating. F. A. Hornbeck."

"Wm. New, 3525 Gillam Road, Kansas City, Mo. [Partly in code message and closing:] Do you want Williams to examine abstract on block sixteen or shall I mail to you? J. C. Firth."

Letter:

"Ft. Stockton, Texas, 6—17—10. Fritz: Have been checking up and find unless I am mistaken we stand as follows: Have purchased for your account block 16, lots 1, 2, 3, 4, 5, and 6, $500.00 cash, $250.00 6 months, $250.00 12 months, $250.00 18 months, 8% block 8, all $1,100.00 cash, $1,100.00 one year, $1,100.00 18 months, 8%. Tracts 79, 80, 85, 86 W. part of Sur. 17, $600.00 cash, $200.00 6 months, $200.00 12 months, 8%. Would suggest you send me draft for $1,600.00 to cover cash payment on block 16—8. In whose name do you want 16 taken? Who do you want to examine it? Don't fail to advise. Sincerely, Jack."

Letter:

"Ft. Stockton, Texas, 6—23—10. Fritz: I am to-day drawing on you, as per telegram of yours, for $2,200.00, to cover cash payment on the following described property; Block 16, lots 1, 2, 3, 4, 5, 6, $500.00, block 8, all, $1,100.-00, tracts 79, 80, 85, and 86 survey 17, $600.00. Yours sincerely, Jack."

Letter:

"Ft. Stockton, Tex. 8—12—10. Miss Jean B. Davidson, Kansas City, Mo.—Miss Davidson: Under separate cover, I am to-day mailing you all papers covering following list of lots and acreage owned by Mr. Hornbeck, lots 1, 2, 3, 4, 5, 6, block 16; all of block 8; you will notice that all of the town lots are deeded to me. As for the town lots you had better write Mr. Hornbeck, asking him what he wishes to do about them. Yours very truly, J. C. Firth."

Draft:

"First State Bank, Ft. Stockton, Texas, June 21st, 1910. Pay to the order of J. C. Firth two thousand two hundred and no/100 dollars, value received and charge same to account of J. C. Firth.

"To F. A. Hornbeck, Kansas City, Mo."

Appellant said:

"This is an original draft, and the matters set out are partly printed and partly written with pen and ink. On the face of the instrument written with lead pencil, is the word 'less,' and to right of same immediately under the figures '2,200' is the figure '1,600' and a line is drawn under the '1,600' as is customary in subtracting one number from another and under the line is the figure '600,' and just to the left of the figures '600' is the words 'per wire,' and under the written words, Kansas City, Mo., is 'Magr., U. S. & Mex. Trust Co.'—all of which is in pencil writing. The face of the draft also has in small letters the word 'with exchange.' The draft is also stamped 'Paid,' dated July 1, 1910, in green ink with letters around margin of stamp, 'First National Bank, Kansas City, Mo.' This draft is indorsed in ink on the back, 'Jno. C. Firth;' also stamped on back with purple ink as follows: 'Pay to the order of any bank, banker or Trust Co. All prior endorsements guaranteed. 1145. June 22, 1910. 1145. First State Bank, Ft. Stockton, Texas.' An exact copy of said draft being as follows: [Then follows copy.]"

Then follow in the record copies of four notes, two each, dated July 5, 1910, in the sum of $250, payable to Rooney, Butz, and Rooney, reciting that they are given in part payment for lots 1 to 6, block 16, Ft. Stockton, conveyed to Firth, retaining lien, and signed by Firth, two notes each dated June 22, 1910, in sums of $1,100, payable to Nas-worthy, in payment of land, Ft. Stockton, conveyed to Firth, retaining lien signed by Firth, notes all marked "Paid." Then follow letters from Hornbeck to First State Bank, Ft. Stockton, inclosing drafts to pay above notes and receipts from the bank acknowledging receipt of drafts and inclosing notes canceled; deeds from Firth to Hornbeck, date September 29, 1910, conveying the properties involved in this suit; second deposition of Hornbeck explaining the notations on the $2,200 draft above. Firth testified that he purchased the real estate levied on for appellant; did not at any time use any money of his own in making the purchases; that the money was furnished by appellant to make the payments; that he never had any interest or ownership in the property; took the title in his name at the request and for the convenience of appellant; executed the deeds to appellant covering the property; appellant paid him nothing for the deeds.

O. W. Williams testified that he examined the abstract of title to the property for appellant at the request of Firth; is appellant's attorney and represented him in this case; did not advise him not to put his deed of record, nor to put them of record; Firth was in the real estate business here at that time and acting largely as appellant's agent.

H. H. Butz testified:

Sold the lots 1 to 6, block 8, to Firth, stating the terms. When the deal was first made there was a forfeit put up of $200, consisting of Firth's check on the First National of Kansas City, and balance of $500 was paid on delivery of deed, and it was paid by Firth's check on the First State Bank of Ft. Stockton. At the time the property was sold witness did not know whether or not appellant had any interest in the property; did not know anything about it until this suit was brought. The $200 check first given on the 30th of May, 1910, was sent for collection on the 28th of June, 1910.

[4] It seems to us that the evidence is clear and convincing—in fact, there is none to the contrary—that Hornbeck, through Firth, as his agent, bought the lands involved in this suit, taking the deeds in Firth's name, and that he (Hornbeck) paid all of the consideration, both the cash and the deferred, with his own money. Firth had only the equitable title in his name, the legal title remaining in the grantors. There is no question made of any reservation by deed of title or interest in Firth in any of the properties. He had none and claimed none. The checks he drew on the Kansas City bank to meet the first cash payments were received by the Ft. Stockton bank for collection, and when Hornbeck paid the checks the money was then applied to the cash payments recited in the deeds. We fail to see how appellee can find any interest whatever remaining in Firth upon which to levy an attachment or execution by reason of the existing trust relation between Hornbeck and Firth, under the undisputed

facts and evidence in this case. This is not a suit between the trustee and the cestui que trust, nor is it a suit between Firth and the grantors in either of the deeds, nor is the question of the undisclosed principal in the deeds in any way involved. The attachment and execution levy could be effective only on such actual interest as Firth had in the lands at the time of the levy.

[5] As said by the Court of Appeals in Railway v. Arias, 10 Tex. Civ. App. 190, 30 S. W. 446, there are cases in which negative testimony might, in the face of positive testimony, sustain a verdict; but in such cases, not only must the comparative credibility of the witnesses be placed in the balance, but there must be something by which the means of knowledge can be weighed.

The evidence is clear and undisputed that Hornbeck furnished every dollar used by Firth in the purchase of the properties levied upon, and that Firth, immediately after receiving the titles in himself, conveyed the entire interest he then held to Hornbeck. If it could be said that Firth, having signed the unpaid purchase-money notes, and for that reason and to that extent, retained an equitable interest in the lands conveyed by him to Hornbeck, the proof shows that before the levy of either the attachment or execution Hornbeck with his own money had paid the notes, and thereby secured to himself both the legal and equitable titles.

Appellee presents three cross-assignments of error: First, to the action of the court in overruling its general demurrer to the petition; second, in overruling its special exception to the petition, it showing on its face that the land in controversy was levied upon more than four months prior to the filing and recording of appellant's title; and, third, to the admission in evidence of appellant's statement to the effect that he had some written correspondence with Firth regarding his taking the title to the properties in his (Firth's) name and signing the notes for deferred payments, the correspondence showing that it occurred subsequent to the taking of the deed in Firth's name. It is the contention of appellee under its first assignment that, Firth having taken the deeds in his name and executed the vendor lien notes in each transaction, Hornbeck, by having furnished the money to pay the cash considerations and assuming the lien notes, can claim a resulting trust in no greater portion of the property than the ratio the cash consideration bears to the entire purchase price, whatever may have been their intentions or agreements preceding, attending, or subsequent to the transactions. Briefly the petition alleged that Firth, by previous agreement and as agent for Hornbeck, bought the properties, paying in each instance a part of the consideration with Hornbeck's money, and executed his (Firth's) notes for the deferred payments, and took the deeds simultaneously in his own name; that Firth subsequently convey-ed the properties to Hornbeck, Hornbeck assuming to pay, and before the levy of the attachment and execution did pay, with his own money, all of the deferred payments. Appellee refers us to a number of cases which he contends sustain his view.

[6] If we are right in our conclusion that the evidence shows that Firth bought the properties with Hornbeck's money and held the titles in trust for Hornbeck, and that, although Firth gave his notes for the unpaid purchase money, Hornbeck paid said notes before the bank made its loan to Firth on which it obtained its judgment against Firth, and before the levy of the bank's attachment and execution, we think it also follows that these facts establish a resulting trust in Hornbeck to the extent of the entire interest in the properties, and that the properties were exempt, by reason of the trust, from the bank's statutory lien under the levy of its execution, as such trusts are not within the operation of the statutes of registration. Blankenship v. Douglas, 26 Tex. 225, 82 Am. Dec. 608; Brown Hardware Co. v. Marwitz, 10 Tex. Civ. App. 458, 32 S. W. 78; Hix v. Armstrong, 108 S. W. 797; Hood v. De Cordova, 92 Tex. 202, 47 S. W. 522. As said in Simpkins on Equity, p. 235, in creating resulting trusts, equity keeps its eye on the consideration and protects the one who furnishes it. The trust follows the consideration. Equity creates the trust for the purpose of transferring the legal estate to the beneficiary, and declares the trust that the right of property may be fixed. The rule would be different if Firth had paid the consideration with his own means, although his intention at the time was to have Hornbeck reimburse him for his money paid. His mere intention at the time of the payment would not create a resulting trust in Hornbeck. Firth would in that instance simply be Hornbeck's creditor to the amount of such payment. Torrey et al. v. Cameron et al., 73 Tex. 583, 11 S. W. 840; Johnson v. First National Bank, 40 S. W. 334. Neither would any act, conduct, or payment of Firth's prior or subsequent to the purchase of the properties, entirely independent of the actual purchase, although the prior or subsequent act is a complete ratification of what was done in the purchase, have the effect to create the resulting trust. But we think that where a purchase is made for Hornbeck by Firth as his agent and earnest money paid, or the first cash payment is made, by Hornbeck, and a deed is executed and delivered in the name of and to Firth, reciting an unpaid balance of the purchase price evidenced by vendor lien notes signed by Firth, and where Hornbeck subsequently, with his own means, paid the cash consideration as previously agreed and understood, such payment would not be an act independent of the purchase of the land, but such subsequent act of payment would be a continuation and part of the original transaction of purchase. Arnold v. El-

lis, 20 Tex. Civ. App. 262, 48 S. W. 883; Perry on Trusts (6th Ed.) § 133. We think the facts of this case can be distinguished from Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030. In that case Saunders purchased the land at public sale in his own name and for himself, and the entire purchase price was expressed in a deferred vendor's lien note. When the note became due Saunders did not have the money to pay the note, and to pay the note he used the money in part payment of children of his first wife, he having their money in his possession in trust, and the balance of the money was taken from money belonging to Mrs. Gordon. It was held in that case that at the time of the purchase by Saunders he did not contemplate the use of the children's money in paying the note, and the use made of the money was in paying off the note, and not in the original purchase of the land three years before. The Supreme Court held that in determining the question of a resulting trust we must look to the transaction in which the money was used, i. e., in paying off the notes, and not in the purchase of the property. It was held that a resulting trust was not created. To the same effect is the holding of the court in Lacey v. Clements, 36 Tex. 662, where the money used was no part of the original purchase money, the court holding that no subsequent advance of money after the purchase was complete can become the subject of resulting trust; the advance of money to create the trust must be coeval with the execution of the deed. In that case Smith, one or two years after the purchase of the property by Lacey, bought the notes given in part payment for the land. He also purchased an older mortgage over the property. Lacey sold the whole property to Smith in discharge of Smith's claim, the half of which Smith sold back to Lacey, and leased to Lacey, the remaining half, Lacey then holding the one-half free of incumbrance. The circumstances did not create a resulting trust. The rule is stated by Perry on Trusts & Trustees (6th Ed.) § 133, that the trust must result, if at all, at the time the deed is taken and the legal title vests in the trustee, and that no oral agreements and no payments before or after the title is taken will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself. But the same author says, if the transaction creates a trust, a subsequent act may enlarge its effect, as by removing a mortgage to which the trust is subject. We think that in the case at bar the entire transaction, when looked to, discloses that the trust was subject to the vendor's lien, and that a discharge of the lien by Hornbeck simply enlarged the effect of the original purchase, and comes well within the rule stated..

[7] There was no error in overruling the general and special exception as claimed in the cross-assignments.

[8] Neither is there error in admitting the evidence complained of in the third cross-assignment. Parol proof is admissible to show the facts leading up to and constituting the entire transaction between Hornbeck and Firth under which the properties were purchased. Hornbeck sufficiently accounted for the absence of the original correspondence, and was then permitted to introduce copies of the correspondence between himself and Firth relating to the transaction of the purchase. Other evidence showed the agency of Firth, and the evidence admitted had reference to the agency and the transaction, and before the transaction of the purchase was fully completed by the payment of the entire purchase money.

For the reasons stated, the case is reversed, and it appearing that the matters of fact have been fully developed, judgment is here rendered that the injunction prayed for by appellant be granted and made final.