**MARKUSFELD et al. v. ZAHN.**

No. 9893.

Court of Civil Appeals of Texas. San Antonio.

Nov. 18, 1936.

Rehearing Denied Dec. 17, 1936.

A. D. Dyess and J. W. Cook, both of Houston, for appellants.

Pope & Pope, of Laredo, for appellee.

MURRAY, Justice.

Elmer Zahn instituted this suit in the district court of Starr county against Bennie Markusfeld and Jake Markusfeld, doing business under the assumed name and style of Markusfeld Banana Company, seeking to recover damages in the sum of $40,000 for personal injuries alleged to have been suffered by the said Elmer Zahn as the direct and proximate result of the negligence of the defendants, their agent and servant.

Elmer Zahn was a young man, 23 years of age, and was employed as a fireman in connection with an oil-drilling rig. Zahn, in company with two companions, George Nicholson and Alonzo Garza, left Rio Grande City in a tan-colored roadster, with top down, to go on a deer hunt in Zapata county. They had drunk some mescal and beer before leaving. They proceeded up highway No. 4, in a northwesterly direction, until they arrived at Roma. They stopped here at the Ramirez filling station and garage. Up to this point Garza had been driving, but from Roma on Elmer Zahn took the wheel. While at the filling station Elmer Zahn, who is the appellee here, had a talk with one C. P. Stearns, an employee of the Allied Drilling Company. Elmer Zahn asked Stearns if his company was employing any more men, and he answered that he did not know, but that he would not advise Zahn to apply for a job in his then condition. Zahn explained that Stearns thought he was drunk. Stearns testified that he did think Zahn was drunk. One Hugh T. Woods, who saw Zahn at the Ramirez Filling Station, testified that Zahn from his appearance was drunk.

Zahn got back in the tan roadster and started on up highway No. 4, in the direction of Laredo. The collision complained of happened about 12 miles northwest of Roma, on this highway, a few minutes thereafter. It was slightly after dark when Zahn left Roma.

Dr. R. C. Hannah met Zahn in this tan roadster before the collision with the truck belonging to the Markusfeld Banana Company and was forced into the ditch on the side of the road, in order to avoid a collision. David Odie Bowen also met the tan roadster before the collision and he also was forced to abandon the road to avoid a collision. Shortly thereafter the tan roadster sideswiped a 1½ ton Chevrolet stake body truck belonging to the Markusfeld Banana Company, driven by one J. W. Nixon. As a result of this sideswiping Elmer Zahn lost his left arm. The highway was sixty feet wide from bar-pit to bar-pit and the view unobstructed for some 600 feet in either direction from the place of the collision. The usually traveled portion of the highway was from 35 to 40 feet wide, leaving about 10 feet on each side not usually traveled.

Zahn testified that when he saw the truck coming some thousand feet away he was blinded by the headlights on the truck and could not see where he was going, nor could he tell on what part of the road he was traveling, but just kept driving from a sense of direction. He was unable to see through the strong headlights of the truck to see what other light the truck had on it. His companions, Garza and Nicholson, testified they were also blinded by the headlights, but managed to see the three lights above the cab of the truck, indicating that they were meeting a truck. None of the three saw any clearance light on the left side of the body of the truck. Neither Garza nor Nicholson could see to tell on what part of the road they were traveling, but Nicholson did look out to the right of the roadster and see the bar-pit just a few feet away when the truck and roadster were about 30 feet apart and just prior to the collision. Zahn had his left arm sticking out through the window on the left side of the roadster, and this arm was scraped off by the stake body of the truck.

The driver of the truck testified that he was proceeding in a southeasterly direction, going in the direction of Roma and was traveling on his right-hand side of the road at the time the truck and the roadster sideswiped. In fact, he testified that he had pulled partly off the usually traveled portion of the road at the time of the impact. He also testified that he had a white clearance light burning on the front left corner of the truck body. He stopped his truck, picked up Elmer Zahn and his two companions and took them into Roma, where Dr. Hannah rendered first aid, and then conveyed them on to the Army Hospital at Fort Ringgold, where Captain Geo. B. Moore, Jr., an army surgeon, operated on Zahn's arm.

Dr. Hannah testified that when he rendered first aid to Elmer Zahn, just a few minutes after the collision, Zahn was under the influence of liquor to a considerable degree. However, Captain Moore, who operated upon Zahn after he reached Fort Ringgold, in answer to the question: "How did he appear to you, to be under the influence of liquor or to be comparatively sober?" answered: "He was oriented as to time, place and person; he answered questions coherently, but I do remember smelling liquor on his breath, or at least I smelled something that smelled like liquor to me."

Nixon, the driver of the truck, reported the accident to Fred Ellert, a constable at

Rio Grande, who placed Nixon in jail for the night, but released him the next morning. Zahn survived the ordeal, but lost his left arm. It was taken off about 2½ inches above the elbow.

The trial was to a jury, and upon their answers made to the special issues submitted to them a judgment was rendered against the two Markusfelds and the Markusfeld Banana Company, in the sum of $7,500, from which judgment they have prosecuted this appeal.

The jury found against appellants on all of their alleged acts of contributory negligence on the part of Zahn and convicted the driver of appellants' truck of three acts of negligence, and found each to be a proximate cause of negligence, to wit: (1) Operating this truck on his left-hand side of the center of the road; (2) failure to give appellee one-half of the road as near as may be; (3) failure to have a clearance light upon the left front corner of the body of the truck. Under the facts herein, the first two acts amount to one and the same thing. They simply mean that the truck was being operated on its left-hand side of the road at the time of the collision.

We have already stated a large portion of the evidence bearing on whether or not the truck was being operated on its left-hand side of the road. We will here add other facts testified to by witnesses. David Odie Bowen testified that he visited the scene of the collision the next morning after it happened, and examined the tracks and other signs on the ground and found, from the marks on the ground, that the truck had pulled to the right, partly off the traveled portion of the road, at the time of the collision. The testimony of C. P. Stearns is to the same effect. It is shown that Elmer Zahn's father and other friends visited the scene of the collision but did not undertake to dispute the testimony of these two witnesses as to what was shown on the ground.

■ All of this positive testimony is only contradicted by the statement of Nicholson that he looked to the right just before the collision and saw the bar-pit only a few feet away. Nicholson admitted he had been blinded by the lights from the truck. He was also unable to estimate the width of the courtroom. In view of the fact that the burden of proof was upon appellee to establish the negligence of the truck driver by a preponderance of the evidence, we are driven to the conclusion that this finding of the jury was so against the great weight and preponderance of the evidence as to be clearly wrong.

■ We next come to a consideration of the other act of negligence found by the jury, that the truck was being operated without a clearance light on the left front corner of the body of the truck. Appellee and his two companions testified that they were blinded by the headlights of the truck and did not see any clearance light. Joe Kirkland testified that he saw the truck the next morning in Rio Grande City. He saw the blood, flesh, and bone on the side of the truck, but he did not see any clearance lights. He was not looking for clearance lights, but felt that if they had been there he would have seen them. He also did not see any signs of one having been torn off the truck. All of this testimony is of a negative nature and does not overcome positive testimony. I. & G. N. Ry. Co. v. Arias, 10 Tex.Civ.App. 190, 30 S.W. 446; Hines v. Roan (Tex. Civ.App.) 230 S.W. 1070, 17 Tex.Jur. 906; Patterson v. Gaines, 6 How. 550, 558, 12 L.Ed. 553.

Against this negative testimony we have the positive testimony of several disinterested witnesses; David Odie Bowen testified that he passed the truck, then the truck passed him, and he passed the truck again just before the collision, and that clearance lights were burning on the truck. The Constable, Fred Ellert, who placed the driver of the truck in jail, testified that the truck did have a front clearance light. Bennie Markusfeld testified that the truck was equipped with a red front clearance light, while the law requires a white one, but there is no contention that a front clearance light of the wrong color caused the collision.

We conclude that the finding of the jury that the truck did not have a front clearance light was so against the great weight and preponderance of the evidence as to be clearly wrong. The burden was on appellee to establish, by a preponderance of the evidence, this act of negligence, and the negative evidence offered on the subject was not sufficient to overcome the positive testimony of disinterested witnesses.

Accordingly, the judgment will be reversed, and the cause remanded.