Bill D. RICHEY, Appellant,

v.

CHICAGO, ROCK ISLAND & PACIFIC
RAILROAD COMPANY, Appellee.

No. 7737.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 25, 1967.

Rehearing Denied Oct. 23, 1967.

Harris E. Lofthus, Amarillo, for appellant.

Thompson, Walker, Shannon & Gracey, Fort Worth, Underwood, Wilson, Sutton, Heare & Berry, Amarillo, R. A. Wilson, Amarillo, of counsel, for appellee.

CHAPMAN, Justice.

This is an appeal from an instructed verdict granted defendant below, Chicago, Rock Island & Pacific Railroad Company,

in a suit against it by appellant, Bill D. Richey, for personal injuries sustained by him when, as a passenger in an automobile, he jumped or was thrown from the automobile when its driver attempted to avoid collision with defendant's train as it was proceeding at night across a public highway referred to in the record as Spur 228. The paved highway is described in the record as crossing the Rock Island track at a point immediately south of the South Gate of Amarillo Air Force Base.

Appellant and the driver of the automobile in which he was riding were both airmen stationed at said base. The record shows the crossing contained red flasher signals to warn approaching traffic when a train is crossing the road or about to do so. A signal pole on each side of the railroad track has four lights back-to-back, two facing south and two facing north, one east of Spur 228 placed south of the railroad track and one west of Spur 228 placed north of the railroad track. Said lights are supposed to flash on and off alternately upon the approach and during the passage of trains.

Appellant pleaded that both he and the driver knew the lights were located at the crossing and depended on them to give warning of the approach or presence of a train, but that on the night of February 25, 1966, as they approached the crossing, the lights were not operating during the time a train was blocking the passage of vehicular traffic. Negligence of the railroad company is claimed in the failure to maintain signal lights in proper operation and the blocking of a public highway at night with unlighted obstructions.

The record shows that the driver of the automobile, James Gazaway, swerved his automobile sharply to the left to avoid colliding with the train and collided with a guard rail. He was killed in the accident.

▮ The point relied on for reversal is that the trial court erred in granting defendant's motion for instructed verdict because plaintiff's evidence was sufficient to create a fact issue for the jury's determination. In passing on this question, the Supreme Court of Texas in Anglin v. Cisco Mortg. Loan Co., 135 Tex. 188, 141 S.W.2d 935 (1940) has held:

"In determining in any case whether or not error has been committed by a trial court in instructing a verdict, the testimony must be considered in the light most favorable to the losing party. Conflicts in the testimony must be disregarded, and every intendment reasonably deducible from the evidence must be indulged in favor of such party and against the verdict."

The quoted statement was later approved by the Supreme Court of Texas with a "writ refused" stamp in Speights v. Deon, 182 S.W.2d 1016 (Tex.Civ.App.–Eastland, 1944, writ ref'd). See also the following cases of like or similar import in their holdings: White v. White, 141 Tex. 328, 172 S.W.2d 295 (1943); Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725 (1930); Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W. 2d 561 (1952); Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951); Choate v. San Antonio & A. P. Ry. Co., 90 Tex. 82, 36 S.W. 247, 37 S.W. 319 (1896); Eastham v. Hunter, 98 Tex. 560, 86 S.W. 323, 325 (1905); Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951); Houston Transit Co. v. McQuade, 223 S.W. 2d 64 (Tex.Civ.App.–Galveston, 1949, writ ref'd). In the last cited case where the trial court disregarded jury findings of contributory negligence against the plaintiff, the Supreme Court of Texas by a "writ refused" stamp has approved the following: "'The court must presume to be true the evidence * * * which was favorable to the party against whom the verdict was instructed; it must also place upon the testimony favorable to him the most liberal construction in his favor that the evidence would reasonably bear, giving him the benefit of all reasonable inferences arising therefrom. Indeed, all evidence contradic-

tory to that favorable to the losing party, under an instructed verdict, should be disregarded.' "

In applying these rules to the facts of the case the testimony of Airman Walker, the only eyewitness testifying except appellant, to the condition of the lights on the side of the railroad track facing the car in which appellant was riding, shows the following:

"Q. Do you know whether that crossing is protected with warning lights?

"A. Yes, sir.

"Q. Had you been over it many times in the past?

"A. Yes, sir.

"Q. Have you ever seen the crossing with a train on it and the lights flashing?

"A. Yes, I have.

 *     *     *     *     *     *

"Q. Well, were there any lights up there?

"A. If there were I didn't see them, and I have pretty good vision and I believe I would have noticed them if they had been working.

"Q. Which way were you looking?

"A. I was looking straight ahead.

"Q. And where were the lights in relation to the place you were looking?

"A. Straight ahead.

"Q. Were you in position where you couldn't help seeing them if they were working or flashing?

"A. Yes, sir; but I didn't see them."

On cross-examination appellee's counsel secured the following testimony from the same witness:

"Q. Do you actually have any real recollection as to whether the flasher signals were working or not?

"A. I didn't notice them; if they were I believe I would have if they had been.

"Q. But can you actually say that you saw that they were not working?

"A. No. sir, I can't.

"Q. Is not the truth of it, that you do not know whether the flasher signals were working or were not working?

"A. Yes, I would say that.

"Q. You just don't know either way, do you?

"A. I am not sure; but I am sure I would have seen them if they had been, and recollected it if they had been."

The law also appears settled in this state that " * * * it is in the province of the jury to resolve conflicts and inconsistencies in the testimony of a witness or between witnesses." Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359 (1957). See also Pritchard Rice Milling Co. v. Ellis, 266 S.W.2d 233 (Tex.Civ.App.–Galveston, 1924, no writ) and Postal Mutual Indemnity Co. v. Penn, 165 S.W.2d 495 (Tex.Civ.App.–Amarillo, 1942, writ ref'd holding: " * * * where a witness contradicts his former testimony it is the province of the jury, and not the court, to determine whether the first or last testimony is true.

The record also indicates that the same witness in an exploratory deposition taken before the trial testified in answer to questions by appellee's counsel as follows:

"Q. And there are flasher lights out there to protect the crossing—did you look at those?

"A. No, sir, I didn't; I don't know if they were blinking or not.

Now, that was your answer on March 2nd, was it not?

"A. Yes, sir.

"Q. And that is the truth as of this date, is it not, that you don't know whether those lights were blinking or not?

"A. Yes, sir."

Clearly, the deposition testimony is in conflict with the above quoted testimony the witness gave favorable to appellant on the trial of the case. However, where the witness, Cecil Butler, testified upon the trial of a case in direct conflict with the testimony he gave on a deposition, our Supreme Court by a "writ refused" stamp has approved the following holding:

"It will thus be seen that the evidence of the witness upon the trial of the case is in direct conflict with his evidence given in the deposition. Appellant argues that this destroys the effect of his testimony and that, with Butler's testimony eliminated, there is no evidence to support the finding of the jury that Butler was in the course of his employment by appellant at the time of the collision. We do not agree with this contention. Where there is a conflict in the testimony of a witness, it is for the jury to determine which portion of the testimony is correct." Lynch Oil Co. v. Shepard, 242 S.W.2d 217 (Tex.Civ. App.–Eastland, 1951, writ ref'd).

Still honoring the rules of our Supreme Court on inferences that must be indulged in favor of the party against whom an instructed verdict is rendered, we turn to the testimony of the appellant, Richey.

After testifying to passing the car in which the witness Walker was riding, relating the position of their vehicle as being a little over half-way up the incline on the road leading upon the railroad track, and stating that he saw the train first and called it to the driver's attention, the testimony shows:

"Q. What did you actually say?

"A. I says, 'Damn, Jim, there's a train.'

"Q. And what did he say about the train?

"A. Well, really nothing.

"Q. Were you looking straight ahead down the road?

"A. Yes, sir.

"Q. Did you see any warning lights?

"A. No, sir.

"Q. Were you looking where the warning lights were?

"A. Yes, sir.

"Q. If they had been flashing would you have seen them?

"A. Yes, sir.

"Q. The part of the train you saw, was that near where the warning lights were?

"A. Yes, sir."

After cross-examination of Airman Richey concerning the activities preceding the fatal accident, particularly with respect to his ability to see whether the flasher signals were working immediately before the fatal accident, re-direct examination produced the following testimony:

"Q. Mr. Richey, in view of the cross examination here, I want you to state definitely whether you were or were not looking in the direction where this flasher signal was installed, at time of approach to this crossing?

"A. I was looking in that direction.

"Q. Were you looking at any time back toward's car, in such a way that would have kept you from seeing that signal if it had been operating?

"A. No, sir, I don't believe so.

"Q. Were you looking at the place where the signal ought to be?

"A. Yes, sir.

"Q. If that signal had been flashing would you have seen it?

"A. Yes, sir, I believe so."

Such testimony, as urged by appellee's brief, has some characteristics of negativeness and conclusions, but we do not believe the following may correctly be so characterized:

"Q. Have you ever made the statement to anybody that would lead them to think that you have at any time expressed any doubt about the signal having been operative?

"A. No, sir.

"Q. Do you now make any such statement?

"A. No, sir.

"Q. Is there any doubt in your mind whatsoever that that signal was not working?

"A. None whatsoever."

To the contrary, such testimony when considered together with his testimony that he was familiar with the location of the warning signals that he was looking straight down the road where they were, and that the part of the train he saw was near where the warning lights were, would, in our opinion, not be classified as negative testimony. All the testimony above related given by Walker and appellant is in the record without objection.

It is true that the witness Richey is a party plaintiff, but so was B. R. Moore in Sigmond Rothchild Co. v. Moore, 37 S.W. 2d 121 (Tex.Comm'n App.–1931). Judge Critz speaking for that section of the court in the cited case said: " * * * Moore's credibility as a witness, and the weight to be given his testimony was for the jury." See also Texas Employers' Insurance Association v. Curry, 290 S.W.2d 767 (Tex.Civ. App.–El Paso, 1956, writ ref'd n. r. e.) where the court said: " * * * the only testimony on the question was by the plaintiff himself, and it has been held many times when the only testimony is by an interested witness the credibility of his testimony is to be submitted to the jury." Even if it should be said, arguendo only, that plaintiff Richey's testimony is inconsistent and even contradictory, it has been held that " * * * inconsistencies and contradictions in the testimony of a party to a suit present issues of fact which are to be decided by the jury, or by the judge in a nonjury trial." Jones v. Texas Department of Public Safety, 392 S.W.2d 176, 180 (Tex.Civ.App.–Dallas, 1965, no writ) and cases there cited.

Appellee assumes in its brief that the testimony of Walker and Richey is all negative and then argues it will not make a fact issue for jury determination as against positive testimony of the four members of the train crew, the signal maintainer and Captain Gierringer. It cites mostly Courts of Civil Appeals opinions without supreme judicial sanction except as to the result reached, some of which were considering questions of the weight and preponderance of the evidence. All are distinguishable from the instant case.

The Supreme Court case of Galveston, H. & S. A. Ry. Co. v. Kutac, 76 Tex. 473, 13 S.W. 327 (1890) relied on by appellee was one where plaintiff Kutac and the driver had testified only that they did not hear the train signals. In Dixon v. Texas & P. Ry. Co., 164 S.W.2d 252 (Tex.Civ. App.–Fort Worth, 1942, writ ref'd w. m.) the testimony relied on to sustain a cause of action against the railway company was that of Mr. and Mrs. Bradley who only said that if the bell was rung, they did not hear it and of Henry Chapman of like negative nature.

In Markusfeld v. Zahn, 99 S.W.2d 438 (Tex.Civ.App.–San Antonio, 1936, no writ) the court was passing upon the weight and preponderance of the evidence question in an appeal from a jury verdict.

Appellee relies on and quotes from Le Master v. Fort Worth Transit Co., 142

S.W.2d 908 (Tex.Civ.App.–Fort Worth, 1940, no writ) where a judgment was rendered non obstante veredicto by the Court of Civil Appeals for the transit company and reversed by the Supreme Court with instructions to enter judgment for plaintiff Le Master upon issues found by the jury convicting the operator of the transit bus of negligence, which was a proximate cause of Le Master's damages.

Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97 (1939) is distinguishable on the facts from our case. There the testimony relied on " * * * were bare conclusions," which cannot properly be said of the evidence in the instant case favorable to appellant.

■ Honoring the inferences the law requires for appellant as against an instructed verdict, we hold against appellee's contention that the trial court correctly directed a verdict for want of competent proof that the red flasher signals were not working. See Texas & N. O. R. Co. v. Foster, 266 S.W.2d 206 (Tex.Civ. App.–Beaumont, 1954, writ ref'd n. r. e.) and cases there cited. However, in doing so we say unhesitatingly that if the case were before us upon the same facts in an appeal from a judgment for plaintiff based upon a jury verdict, we would hold that " * * * the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains 'evidence of probative force' in support of the verdict." In re King's Estate, supra.

■ We cannot agree with appellee's contention made in its second counter point to the effect that the trial court had the authority to find as a matter of law that if the red flasher signals were not working, such deficiency could not have been a proximate cause of the accident. Considering the evidence in the light most favorable to appellant, as we must from the abundant authority heretofore cited, the

jury could have determined that failure of the flasher signals to be working at the time in question was a proximate cause of the injuries to appellant. The testimony of Walker and Richey, considered with such favorable inferences, shows the airmen knew the warning lights were on the crossing, they had been over the crossing many times, they knew that night the signals were there, they were looking straight ahead toward them but did not see them even though they were not driving the automobiles. Surely, it could not be said then, as a matter of law, that Richey or Gazaway, the driver, would not have seen such signals before they saw the train on the crossing at ten to 11:00 o'clock at night had such signals been working. There is evidence from which a jury could have found that the part of the train on the crossing immediately before the accident was dark because the engine had already passed and the caboose had not then reached the crossing. Therefore, we do not believe a trial court or an appellate court has the legal authority to hold as a matter of law that the signal flasher could not have been seen more quickly than dark and unlighted railroad cars, or that flasher signals could not have been seen even before the Gazaway car reached the top of the incline, thus showing causation. As heretofore indicated, we believe in considering all the evidence that they were working, but that is not the question before us. We do not consider it necessary even to cite authorities on the question of proximate cause.

By cross-point appellee contends this court materially erred in granting appellant's motion to file a statement of facts in the case and in overruling its motion to strike.

The record shows that on December 21, 1966, counsel for appellant secured from the court reporter the subject statement of facts and delivered it to our clerk for filing. After it was accepted, our clerk called to counsel's attention that it had not been signed either by opposing counsel or

the trial court. Mr. Lofthus then took the record to Mr. Wilson's office, attorney for appellee, but was informed that Mr. Wilson was out of his office for the holidays and would not be back until December 29, two days after due time for filing.

A letter from Mr. Wilson to the trial court dated January 19, 1967, advised he was contesting the right to file the record but except for some corrections of no particular consequence, which he had made in the statement of facts, it correctly records the testimony.

A letter in the statement of facts to our court by the trial judge recognizes that he did not sign it because it was not timely filed.

Article 377(d), Vernon's Ann.Tex.Rules, provides it is unnecessary for the trial judge to sign the statement of facts except where a difference arises as to whether the record discloses what occurred in the trial court. There is no such disagreement. Therefore, the only signature lacking is that of appellee's counsel, who has, in fairness to the question, admitted into the record that the statement of facts is correct.

If a statement of facts could be kept out of our court under the circumstances shown in this record, all an attorney would have to do would be to make himself unavailable until time has passed for filing after the statement of facts is delivered to appellant. We do not believe an appellate court should give sanction to a construction of any rule that would make such actions possible in the absence of a direct rule requiring it.

■ The letter of December 22, 1966, by Mr. Lofthus, shows good cause, we think, for not securing opposing counsel's signature. The facts of the situation here do not come within the rules of Matlock v. Matlock, 151 Tex. 308, 249 S.W.2d 587 (1952) relied on by appellee.

Though we have stated if this record with the same evidence were before us from a judgment for appellant based upon a jury verdict in his favor, we would unhesitatingly hold in such instances, if the question was raised, that the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, this does not excuse the trial court in refusing to submit it to a jury.

■ It has been held many times that: "If an issue of fact is raised by the evidence, it must go to the jury even though a verdict based on such evidence would have to be set aside as not supported by sufficient evidence." Maryland Casualty Co. v. Morua, 180 S.W.2d 194 (Tex.Civ. App.–Waco, 1944, writ ref'd); Bryant v. Hamlin, 373 S.W.2d 837 (Tex.Civ.App.– Dallas, 1963, writ ref'd n. r. e.); Alaniz v. Haegelin, 384 S.W.2d 431 (Tex.Civ.App.– Eastland, 1964, no writ); Watson v. Jones, 348 S.W.2d 414 (Tex.Civ.App.–Waco, 1961, no writ).

The judgment of the trial court is reversed and remanded.