**DALLAS RAILWAY & TERMINAL CO.,**
Appellant,

v.

Lilas VAN GILDER et vir., Appellees.

No. 15232.

Court of Civil Appeals of Texas.

Dallas.

April 12, 1957.

Rehearing Denied May 10, 1957.

Burford, Ryburn, Hincks & Ford, and Joseph M. Stuhl, Dallas, for appellant.

Sanders, Nolen, Dees & Stevenson, and Hassell & Hassell, Dallas, for appellees.

DIXON, Chief Justice.

This suit was brought by Lilas Van Gilder and her husband Harold Van Gilder, appellees, to recover for personal injuries and property damage sustained by Lilas Van Gilder and her automobile in an intersectional collision with one of appellant's street cars. Following a jury verdict, judgment was rendered for appellees for $8,500.

The jury answered special issues as to the operator of appellant's street car as follows: (1) and (1–a) he operated the street car at an excessive rate of speed which was a proximate cause of the collision; (2) and (2–a) he failed to keep a proper lookout which was a proximate cause; (3), (3–a) and (3–b) he failed to sound an audible signal which was negligence and a proximate cause; (4) and (4–a) he failed to have the street car's headlight burning, but such failure was not negligence; (5), (5–a), (5–b) and (5–c) appellee had the right-of-way, but the operator failed to yield, which was negligence and a proximate cause.

As to appellee Lilas Van Gilder, the jury found that: (6) and (6–a) appellee failed to keep a proper lookout, but such failure was not a proximate cause of the collision; (7) and (7–a) she failed to make a proper application of her brakes, but such failure was not a proximate cause; (8) she did not drive her automobile upon the street car tracks in front of the street car at a time when the street car had started to cross the intersection; and (9) she was not operating her automobile at an excessive rate of speed at the time.

■ Appellant's first point on appeal asserts that the court gave an erroneous instruction in connection with special issue No. (5), which issue inquired whether appellee Lilas Van Gilder had the right-of-way on the occasion in question. The challenged instruction was as follows: "You are further instructed that when two vehicles enter an intersection from different roadways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

Appellant's contention is that the above quoted instruction, which follows art. 6701d, sec. 71, subsec. (b), Vernon's Ann. Civ.St. is not applicable to street cars for the reason that street cars are not vehicles as defined in art. 6701d, sec. 2, subsec. (a), V.A.C.S.

We agree with appellant. The above named statute defines vehicles as follows: "Vehicle. Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, *except devices * * * used exclusively upon stationary rails or tracks.*" (Emphasis supplied.) Since street cars are used exclusively upon stationary rails or tracks, they are not included, but are expressly excluded from the definition of vehicles.

How, then, is a street car to be defined and what is the law pertaining to right-of-way as to street cars at intersections? For the definition we must look to art. 6701d, sec. 7, subsec. (c), V.A.C.S., which read as follows: "Street Car. A car other than a railroad train for transporting persons or property and operated upon rails principally within a municipality." For the law pertaining to the right-of-way as to street cars at intersections, we must look to art. 6701d, sec. 84, subsec. (b), V.A.C.S., which is as follows: "When a street car has started to cross an intersection, no driver of a vehicle shall drive upon or across the car tracks within the intersection in front of the street car."

The law concerning the right-of-way at an intersection with reference to an automobile and a street car has heretofore been

construed by this Court. Havins v. Dallas Ry. & Terminal Co., Tex.Civ.App., 130 S. W.2d 878, 880. At the time the Havins case was decided, the statutes involved here had not been passed by our Legislature. But the Court interpreted City Ordinances which are practically identical in language with the present statutes. Here is what the Court said:

* * * Obviously, the general ordinance (2802) gives the right-of-way at intersections to operators of vehicles who first enter the intersection; while the special ordinance (2808) gives the right-of-way to street cars, requiring operators of other vehicles to yield the right-of-way. Special statutes take precedence over general laws, as affecting the course and conduct of things and persons. When Felton Havins entered the intersection ahead of the street car, as found by the jury, such did not authorize him, in violation of the special statute, to go upon the car track, * * *. The operator of the street car in question, under the terms of Ordinance 2808, had a right to assume that the operator of appellant's vehicle, approaching the track from a different highway, and who, in fact, had entered the intersection, would not violate the terms of the ordinance by going upon the track ahead of the approaching street car."

The Court in the Havins case does indeed at one point say that "vehicles" is a general term broad enough to include street cars on tracks. In the light of the rest of the opinion and the decision rendered, this must have been an inadvertence, especially in view of the ordinances then before the Court for its interpretation. At any rate, we are not here concerned with "vehicles" as a general term. We are concerned only with "vehicles" as given an express legal definition in art. 6701d, sec. 2, subsec. (a), V.A.C.S.

The jury answered special issues (5), (5–a), (5–b) and (5–c), the right-of-way issues, adversely to appellant. There-

fore the erroneous instruction above discussed cannot be considered immaterial. We sustain appellant's point No. 1.

Appellant's points on appeal Nos. 2–31, allege: (1) that the jury's answers to special issues (1), (1–a), (2), (2–a), (3), (3–a), (3–b), (5), (5–a), (5–b), (5–c), (6–a), (7), (7–a), (8) and (9), were not supported by any evidence of probative value, or were contrary to the undisputed evidence; and (2) that the answers of the jury (except as to issues Nos. 7, 11 and 12) were against the great weight and preponderance of the evidence. In an equal number of counterpoints appellees take issue with appellant in regard to each of the above points. Obviously a consideration of these points and counterpoints requires a careful study of the evidence.

Appellee Lilas Van Gilder testified that between 6:30 and 7:00 p. m. on January 15, 1953 she was driving her 1935 model Chevrolet coupe west on Lindell Street in the City of Dallas, Texas, at a speed between fifteen and twenty miles per hour, approaching the intersection of Lindell and Matilda Streets. The weather was very cool, in fact cold, and all the windows in her car were up; it was cold enough that she had stopped by a service station to have her radiator checked. It was about dusk, not yet dark, but she had turned on her headlights because she had just seen another car with its lights on. It was not dark enough for the street lights to be on, though they came on very soon after the collision. She was familiar with the intersection, having driven on Lindell Street many times before, and knew that double street car tracks ran north and south on Matilda Street. She looked both to her left and to her right, but saw no street car coming. She could see a distance of about a half block up Matilda Street to her right. She could see farther to her right than to her left because there were some shrubs and trees on the southeast corner of the intersection which partially obscured her view to her left. Pro-

ceeding into the intersection at a speed of fifteen miles per hour, or less, she had gone more than halfway across the nearest track when a huge shadow loomed up at her left almost at her elbow; at nearly the same instant the crash occurred. At the time of the crash she was a little past the middle of the intersection; the back wheels of her car were still on the nearest street car track. When she first saw the street car it was just an object right there at her elbow and she was right over the middle of the tracks. Her car continued on across Matilda Street, but swung around to the northwest corner of the intersection, coming to rest against the curb and facing back the way the street car had come from. The street car had hit her car on her left side at the rear of her left front fender and her left door. She saw no lights on the street car, nor did she hear any audible signal from the street car. The street car must have stopped as soon as it hit her, because after the impact it was still sitting right there; however she didn't know whether it had practically stopped at time of the collision, or had moved forward after the collision. She did not know the speed of the street car, knew nothing about the speed of the street car and couldn't give any help on that question. In fact she did not see the street car until it loomed up as a big shadow almost at her elbow at about the same moment it hit her car. She stated that she considered she had the right-of-way.

The operator of appellant's street car testified that the weather was cloudy and cool at the time of the accident. The street car was about 45 feet long. Its headlight and the lights inside were on. He slowed down almost to a stop as he approached the intersection. He did not remember whether he sounded a gong or warning of any type as he came into the intersection, though it is a habit to sound the gong. When he first saw appellee's automobile it was about three houses back from the corner, about 150 feet away. He started on across the intersection, thinking he

could make it, but started applying his brakes when he saw that appellee was not going to stop. The street car was completely stopped at the time of the collision. The witness thought appellee's automobile was traveling at a speed of about thirty to thirty-five miles per hour as it approached the intersection, but he is not a good judge of speed. Appellee did not decrease her speed as she drew nearer the intersection. The street car did not hit appellee's car. Her car hit the street car. Evidently appellee saw the street car at the last instant. She dodged to the right, in other words, cut her wheel to the right, but the side of her car at about her door hung the rounded right front of the street car from the headlight over to the corner, tearing the headlight off the street car. Then appellee whipped back around and was headed south on Matilda Street when she stopped. The collision took place about the middle of the intersection.

■ Appellee Lilas Van Gilder and the operator of the street car were the only witnesses who testified as to the facts with reference to the collision. The operator's testimony was unfavorable to appellee, but it is plain from the answers to the special issues that the jury did not believe the operator's testimony. The question then is: Considering the testimony of appellee together with the surrounding circumstances in a light most favorable to appellee, is there sufficient evidence to support the jury's verdict? We have reached the conclusion that the evidence considered as a whole, both direct and circumstantial, is not sufficient to support the jury's verdict as to speed, right-of-way, proper lookout, and proper application by appellee of the brakes on her car.

We find no evidence, and certainly not sufficient evidence, in the record to support a finding that the street car was being operated at an excessive rate of speed, or that excessive speed on the part of the street car was a proximate cause of the collision. Appellant's operator testified that

he had slowed down almost to a stop as he approached the intersection and had come to a complete stop at the moment of the collision. Appellee herself testified that the street car "must have stopped as soon as it hit me," because it was still sitting right there after the accident. She further testified very positively that she did not have any idea as to the speed of the street car. If we reject all of the operator's testimony, we still must hold that there is no evidence and in any event not sufficient evidence in the record to uphold the jury's verdict in regard to the speed of appellant's street car. We sustain appellant's points Nos. 12, 13, 14 and 15.

The jury found that appellee had the right-of-way at the time and occasion in question; that the street car failed to yield the right-of-way, which failure was negligence and a proximate cause of the collision. The jury further found that appellee did not drive her automobile upon the car tracks in front of the street car at a time when the street car had started across the intersection.

As we have already stated, appellant's operator testified that he slowed down almost to a stop at the intersection. He saw appellee's car about three houses away to his right on Lindell Street. He proceeded into the intersection. He applied his brakes and says he came to a complete stop in the middle of the intersection where appellee's automobile hit the rounded front of the street car as appellee swerved to her right at the last instant. Appellee says that she did not see the street car until almost at the moment of collision. At that time her front wheels had cleared the street car tracks, but her back wheels were on the tracks. She was slightly more than halfway across the tracks.

In sustaining appellant's point No. 1 we held that art. 6701d, sec. 71, subsec. (b), V.A.C.S., is not applicable to an intersectional situation involving a street car and an automobile. If we were in error in so holding, and if appellee is correct in her contention that the above cited statute is applicable in this case, we are then confronted with a question of the sufficiency of the evidence even under appellee's theory of the law.

If we reject the operator's testimony, there is no probative evidence direct or circumstantial as to whether appellant's street car or appellee's automobile first entered the intersection. Nor is there direct probative evidence or circumstance to support the theory that appellee's automobile arrived at the intersection about the same time as the street car. Both appellee's testimony and the circumstances indicate that appellee drove her car upon or across the tracks within the intersection in front of the street car. Neither the direct testimony nor the circumstantial evidence is sufficient in our opinion to support the jury's findings as to right-of-way even under appellee's theory; or to support the jury's finding that appellee did not drive her automobile upon the car tracks within the intersection in front of the street car at a time when appellant's street car had started to cross the intersection. We sustain appellant's points Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11.

The next points we shall consider are those having to do with the evidence pertaining to the jury's answers in regard to proper lookout on the part of the operator of appellant's street car. Without setting out the material evidence bearing on the question, for it has already been summarized, we are of the opinion that appellant's points are well taken. Therefore points Nos. 16, 17, 18 and 19 are sustained.

Is there any evidence, or sufficient evidence to support the jury's findings in regard to the alleged failure of the street car operator to sound an audible signal? In our opinion the record contains no evidence, certainly not sufficient evidence of probative value on the point. The operator's testimony was that he did not remember sounding the gong, though it was.

a habit to do so. Appellee testified that her windows were rolled up because of the cold and that she did not hear an audible signal from the street car. There is no evidence that appellee could have and would have heard the street car's gong if it had been sounded. Under such circumstances we cannot say the jury's answers find support in the evidence. Willis v. Lewis, 28 Tex. 185; International & G. N. Ry. v. Arias, 10 Tex.Civ.App. 190, 30 S.W. 446. Appellant's points Nos. 20–25 inclusive are sustained.

The jury answered that appellee failed to keep a proper lookout and failed to make a proper application of her brakes, but that neither of said failures was a proximate cause of the collision. The evidence as heretofore summarized does not seem to us to support the jury's answers as to proximate cause. We sustain appellant's points Nos. 26–29 inclusive.

Appellant's points Nos. 30 and 31 assert that the jury's finding that appellee was not driving at an excessive rate of speed was contrary to the undisputed evidence and was also against the weight and preponderance of the evidence. We overrule said points.

 Appellee's pleadings do not allege future pain and suffering, so we think it was error to include future pain and suffering in the damage issue. Harkey v. Texas E. I. Ass'n, 146 Tex. 504, 208 S.W.2d 919. Appellee had been employed prior to the collision, but we find no evidence as to how much she earned. Consequently there was no measure or basis for a finding by the jury as to the probable amount of her loss of earnings in the past, and such element should not have been included in the damage issue. Appellant's points Nos. 32 and 33 are sustained.

We do not agree with appellant that there is no evidence to support the jury's finding of $1,000 for doctor's bills in the past and in the future. Appellant's point No. 34 is overruled.

Appellant's point No. 35 complains because of the court's refusal to give an instruction to the effect that no recovery should be allowed appellee for injuries resulting from the osteo-arthritic condition in her neck not directly and proximately resulting from the accident in question. Appellee's doctor testified that the accident would very readily account for the neck condition, and that hemorrhage had occurred in an anterior longitudinal ligament resulting from an injury in which appellee's head was "snapped back." Appellee testified that she had never had any trouble with her neck prior to this accident. We find no evidence that appellee's neck condition was due to any aggravation of a previous injury, or that her neck condition was caused by anything other than the accident in question in this case. We overrule appellant's point No. 35.

For the errors pointed out the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.