**AFFIRMED AS MODIFIED and Opinion Filed November 20, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00631-CV

### MAGDALENA GARCIA AND GONZALO AVELAR A/K/A
### GONSALO AVELAR A/K/A GUSTAVO AVELAR, Appellants
### V.
### DANIEL MACIAS NUNEZ, Appellee

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-02267**

## MEMORANDUM OPINION

Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Whitehill

Appellee Daniel Macias Nunez sued appellants Magdalena Garcia and Gonzalo Avelar for negligence after Nunez sustained personal injuries while helping Avelar replace a window in a house. Specifically, he claimed that he injured his right arm when he fell from a ladder. The case was tried without a jury, and the trial court rendered judgment for Nunez.

Appellants raise five issues on appeal. In resolving those issues, we hold, among other things, that (i) Texas Civil Practice and Remedies Code Chapter 95 does not apply to Nunez's claims because they do not arise from the condition or use of an improvement to real property and (ii) the trial court abused its discretion by awarding Nunez disfigurement damages that were

neither pled nor tried by consent. We modify the judgment to eliminate the past and future disfigurement damages and affirm the judgment as modified.

## I. BACKGROUND

### A. Facts

The trial evidence supported the following facts:

Appellants Garcia and Avelar are married. They own some rental properties, and Avelar does most of the maintenance on those properties.

One of appellants' rental houses had a broken window. Avelar hired Nunez to help him replace it. On July 14, 2014, they went to the house and removed the broken window. Then Avelar went inside the house. Nunez testified, "[Avelar] told me to grab the ladder so that I could help him to screw in the [new] window." The ladder was about four feet tall. Photos taken outside the house showed that the bottom of the window was slightly higher than the top of the ladder.

Nunez's testimony about the accident was not entirely clear, but he seemed to say that the ladder's top step was made of plastic and appeared "discolored, without color" and "burnt." The plastic broke when he stepped on it, and he fell. Avelar took him to the hospital for treatment.

Avelar's testimony indicates that he did not see the accident; rather, he briefly left the window area to get some screws and returned to find Nunez "strewn on the ground." He further said that the ladder was not broken the day of the accident and that it didn't break that day. He also said that he used it after the day of the accident and there was nothing wrong with the top step. He later showed the ladder to someone sent by Nunez's lawyer. Sometime after that, the ladder was stolen from the yard.

Medical records state that Nunez (i) "lost his balance and fell" and (ii) suffered a dislocated right elbow. He had surgery on his right elbow the day of the accident. Records from September

2014 indicate that Nunez suffered from some impairment in carrying, moving, and handling objects.

Nunez testified that he still had some pain from the injury, he can't carry heavy things, and the injury prevents him from doing construction work. Now he does "warehouse work," and he uses his left arm to do his work.

**B.      Procedural History**

Nunez sued appellants for negligence. They answered and asserted various defenses.

The case was tried in a one-day bench trial. The parties were the only witnesses.

The trial judge signed a judgment awarding Nunez $227,624.72 in damages against appellants jointly and severally. The judge also signed findings of fact and conclusions of law. The findings detailed the damages found as follows:

| | |
|---|---|
| Past pain and suffering | $75,000 |
| Past physical impairment | $75,000 |
| Past disfigurement | $10,000 |
| Past reasonable and necessary medical expenses | $32,624.72 |
| Future pain and suffering | $10,000 |
| Future physical impairment | $20,000 |
| Future disfigurement | $5,000 |

Appellants timely appealed. Nunez did not file an appellee's brief.

## II.  ANALYSIS

**A.      Summary of the Issues**

Appellants raise five issues:

First, the trial court should have rendered a take-nothing judgment against Nunez based on Texas Civil Practice and Remedies Code Chapter 95.

Second, the trial court should have rendered a take-nothing judgment against Nunez because as a matter of law appellants owed Nunez no duty.

Third and fourth, the damages findings are supported by legally and factually insufficient evidence.

Fifth, the disfigurement awards must be reversed because they were neither supported by the pleadings nor tried by consent.

**B.      Issue One:  Does Texas Civil Practice and Remedies Code Chapter 95 bar Nunez's claim?**

Texas Civil Practice and Remedies Code Chapter 95 makes it more difficult to recover from property owners in certain negligence cases.  *See generally* TEX. CIV. PRAC. & REM. CODE §§ 95.001–.004.  If the statute applies, the claimant must prove the two elements stated in § 95.003 to recover.  *See id*. § 95.003; *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51–52 (Tex. 2015). Appellants argue that (i) Chapter 95 applies to Nunez's claims and (ii) Nunez introduced insufficient evidence of the § 95.003 elements.

**1.      Error Preservation**

Appellants' live pleading did not invoke Chapter 95, and on appeal they do not claim to have raised Chapter 95 in the trial court.  Rather, they argue that Chapter 95 is not an affirmative defense, citing *Gorman v. Meng*, 335 S.W.3d 797, 803 (Tex. App.—Dallas 2011, no pet.), *disapproved on other grounds by First Tex. Bank v. Carpenter*, 491 S.W.3d 729, 732–33 (Tex. 2016).  Still, even if Chapter 95 is not an affirmative defense, to preserve the issue for appeal it was arguably incumbent on appellants to make the trial court aware that Chapter 95 applied and barred Nunez's claim.  *See* TEX. R. APP. P. 33.1.

For purposes of this appeal, we will assume without deciding that error preservation was not necessary.

**2.      Chapter 95 does not apply.**

Appellants' first issue turns on the meaning of § 95.002, which provides:

This chapter applies only to a claim:

(1)     against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2)     *that arises from the condition or use of an improvement to real property* where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

CIV. PRAC. § 95.002 (emphasis added).

The supreme court has given § 95.002(2)'s terms their ordinary meanings as developed in Texas jurisprudence. *See Abutahoun*, 463 S.W.3d at 48–49. It held that "arises from" means "is caused by." *Id*. at 48. A "condition" is "either an intentional or an inadvertent state of being." *Id*. at 49. "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id*. And "improvement" includes "all additions to the freehold except for trade fixtures [that] can be removed without injury to the property." *Id*.

Appellants' reliance on Chapter 95 fails because there is no evidence that Nunez's claims arise from the condition or use of an improvement to real property. *See Gorman*, 335 S.W.3d at 802 (indicating that defendant bears the burden of showing that Chapter 95 applies to the claim). The only evidence on point indicates that Nunez was injured by falling from a free-standing ladder, which is not an improvement to real property because it is not an "addition[] to the freehold." *Abutahoun*, 463 S.W.3d at 49. Thus, § 95.002(2) has not been satisfied, and Chapter 95 does not apply.

Appellants argue to the contrary based on three cases decided by our sister courts: *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Admire v. H.E. Butt Grocery Co.*, No. 01-02-00060-CV, 2003 WL 203514 (Tex. App.—Houston [1st Dist.] Jan. 30, 2003, no pet.) (mem. op.); *Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198 (Tex. App.—Houston [1st Dist.] 2000, pet. denied), *disapproved on other grounds by Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564–65 (Tex. 2016).

However, after appellants' cases were decided, the Texas Supreme Court twice held that the statute means what it says.

First, in *Abutahoun*, the court said, "When a claim does not 'arise from a condition or use of an improvement to real property where the contractor or subcontractor . . . modifies the improvement,' Chapter 95 does not apply . . . ." 463 S.W.3d at 52 (quoting § 95.002(2)).

Second, in *Ineos*, the court further held that "Chapter 95 only applies when the injury results from a condition or use of the same improvement on which the contractor (or its employee) is working when the injury occurs." 505 S.W.3d at 567.

Accordingly, we conclude that appellants' cases have been disapproved to the extent they hold that Chapter 95 can apply when the claim does not arises from a condition or use of an improvement to real property.

### 3.    Conclusion

Appellants adduced no evidence that § 95.002(2)'s requirements were satisfied, so Chapter 95 did not apply to Nunez's claims. We overrule appellants' first issue.

**C.    Issue Two:  Were appellants entitled to judgment as a matter of law because they owed Nunez no duty of care?**

In their second issue, appellants argue that the trial court erred by finding that appellants' negligence proximately caused Nunez's damages because as a matter of law appellants owed Nunez no duty of care. Appellants' argument proceeds as follows:

- An employer owes no duty to warn an employee of hazards that are commonly known or that the employee already knows about.

- Nunez's only negligence theory is that appellants failed to supply him with "the correct ladder," meaning a ladder that could have been leaned against the wall while Nunez was putting the screws in.

- But any danger posed to Nunez by using the "triangular" four-foot ladder was obvious and actually known to Nunez.

- Therefore, appellants owed Nunez no duty on the facts of this case.

As we explain below, appellants' issue fails because the second step of their argument is incorrect.

A common-law negligence claim has three elements: (i) a legal duty, (ii) a breach of that duty, and (iii) damages proximately resulting from the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). Whether a duty exists is a legal question. *Id*. An employer owes its employees several duties, including the duty to furnish reasonably safe equipment necessary to perform the job. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 215 (Tex. 2015). On the other hand, an employer owes its employee no duty to warn of hazards that are commonly known or already appreciated by the employee. *Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793, 794 (Tex. 2008) (per curiam).

In this case, the trial court did not specify the duty that appellants breached, nor did it specify the acts or omissions constituting a breach. It made only a general finding that "[t]he negligence of each of Defendants Gonzalo Avelar & Magdalena Garcia were the sole proximate causes of Plaintiff's injury and damages made the basis of suit."

Appellants' argument incorrectly assumes that the trial court's general negligence finding must have been premised on a duty to warn—a duty, that is, to warn Nunez about the danger that he could lose his balance if he stood on the ladder's top step. Based on the pleadings and the evidence, however, the negligence finding could have been premised on the duty to provide reasonably safe equipment necessary to perform the job. That is, the trial court could have found that Nunez fell because the ladder's top step broke as he stepped on it and not because he simply lost his balance.

Appellants contend, without citing legal authority or any specific legal principle, that during closing argument Nunez "abandoned any theory of liability based on the ladder breaking" and limited himself to the theory that appellants should have supplied a different kind of ladder that would have been safer for this job. Although Nunez's closing argument emphasized the

different-ladder theory, we conclude that the record does not establish that Nunez abandoned the broken-step theory. Nunez's lawyer said the following during closing argument:

> He should have utilized a lateral ladder that you can put up against the wall that you climb up so you're straight up while you're putting the screws in. *This type of ladder that he utilized, I think it being broke or not broke, that's a moot point.*
>
> The point is that this ladder was the wrong type for the situation and job that he was asking Mr. Nunez to perform. . . . And we believe that the lack of the correct ladder is the sole and proximate cause of that, and that his not supplying the plaintiff with the necessary instrumentalities needed for him to safely perform his job duties did not happen in this case.

(Emphasis added.)

Nunez's live petition alleged that he fell because a ladder step broke. During his opening statement, his lawyer asserted that a ladder step broke and caused Nunez's fall. And Nunez's lawyer elicited testimony from Nunez about the broken step. Although his closing argument emphasized a different negligence theory, we conclude that the lawyer's single reference to the broken-step theory as being "moot" did not clearly repudiate or abandon that theory. *Cf. Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996) (per curiam) ("A judicial admission must be a clear, deliberate, and unequivocal statement."); *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 349 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (equivocal statement during closing argument was not a judicial admission). Moreover, on this specific record the factfinder would have been free to review the evidence and independently decide that evidence supported a different theory than counsel emphasized during closing argument.

Because appellants' second issue depends on the incorrect premise that the trial court could not have found appellants negligent for failing to provide reasonably safe equipment, their argument fails. We overrule appellants' second issue.

**D.**      **Issues Three and Four:   Are the damages findings supported by legally and factually sufficient evidence?**

In issues three and four, appellants raise legal and factual sufficiency challenges to all the damages findings.   We reject their sufficiency challenges as to pain and suffering, physical impairment, and medical expenses.   We do not address their sufficiency challenges to the disfigurement damages because we reverse those damages on other grounds under issue five.

### 1.      Standard of Review

We review a trial court's findings after a bench trial under the same standards applicable to jury findings.  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

When an appellant attacks the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that no evidence supports the finding.  *Hoss v. Alardin*, 338 S.W.3d 635, 640 (Tex. App.—Dallas 2011, no pet.).   Evidence is legally sufficient if it is sufficient to enable reasonable and fair-minded people to reach the verdict under review.  *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).   In conducting our review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it.  *Id*. at 822.   We must credit evidence favorable to the finding if a reasonable person could, and we must disregard contrary evidence unless a reasonable person could not.  *Id*. at 827.

When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate that there is insufficient evidence to support the adverse finding.  *Hoss*, 338 S.W.3d at 651.   In reviewing the challenge, we consider all the evidence and set the finding aside only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust.  *Id*.

## 2. Pain and Suffering

The trial court awarded Nunez $75,000 for past pain and suffering and $10,000 for future pain and suffering. We hold that the evidence was legally and factually sufficient to support these awards.

Pain and suffering damages are inherently amorphous and subjective. *Wal-Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 667–68 (Tex. App.—Dallas 2018, pet. granted, aff'd as modified w.r.m.). If there is some evidence that the claimant experienced some pain and suffering, the factfinder has great discretion in determining the award's amount because there is no objective way to measure those damages. *Id*. at 668.

The following evidence supports these damages awards:

- The July 14, 2014 medical records from Nunez's initial presentation at Children's Medical Center state, "The pain is severe," and, "He appears distressed (in pain)." They also state that he had an open wound with "noted dirt in the wound." The records reflect at one time he reported a pain score of four on a scale from zero to five. An x-ray showed that his right elbow was dislocated.

- Nunez was then sent to Parkland Hospital. Parkland records show that he reported "sudden stabbing and throbbing pain with a severity of 8/10." Later that day he reported a pain severity of "7/10." The records note that he had a "1.5 cm posteromedial poke hole laceration with exposed bone." He had surgery on his elbow that night.

- He was discharged from the hospital on July 16, 2014. The records reflect that he reported that his pain was "relieved."

- Nunez received occupational therapy after his initial treatment. Records show that he reported a pain score of 3/10 on August 8, 2014. He went to the hospital on August 17, 2014, reporting right elbow pain and saying that he thought he twisted his elbow in his sleep. He had therapy on August 22, 2014, and reported a pain score of 3/10. He had therapy on September 5 and 12, 2014, and reported a pain score of 2/10 on both occasions. On September 19, 2014, he reported a pain score of 3/10. On September 26, 2014, he reported a pain score of 2/10. He reported a pain score of zero at a follow-up visit on October 30, 2014.

- Nunez testified that his arm was in pain after his accident, it took more than six months for his bones to heal, and he was in pain during that period. He also testified that he was in a cast for more than six months. Medical records

–10–

indicate that his splint and sutures were removed during a doctor visit on August 17, 2014. Other records, however, show that on August 29, 2014, Nunez was fitted with "a new elbow extension cast for night wear."

• He further testified that he still got stabbing pains in his arm "[w]hen the weather's cold, when the days are cool."

There was ample evidence that Nunez experienced some pain and suffering from his injury. We conclude that the $75,000 award for past pain and suffering was not clearly wrong or manifestly unjust.

There was also some evidence that Nunez still occasionally experienced pain at the time of trial. The trial court could reasonably infer that Nunez would continue to experience this pain in the future, and we conclude that the much smaller award for future pain and suffering was not clearly wrong or manifestly unjust. *Cf. id.* at 667–69 & n.6 (affirming $150,000 award for past physical pain and mental anguish and award of $125,000 for future pain and anguish); *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 489 (Tex. App.—Dallas 2016, pet. denied) (affirming $150,000 award for past physical pain and mental anguish).

### 3. Physical Impairment

The trial court awarded Nunez $75,000 for past physical impairment and $20,000 for future physical impairment. We hold that the evidence was legally and factually sufficient to support these awards.

"Physical impairment is a distinct injury from pain and suffering and includes limitations on physical activities." *Bishop*, 553 S.W.3d at 668. It also encompasses loss of enjoyment of life and loss of the injured person's former lifestyle. *Day v. Domin*, No. 05-14-00467-CV, 2015 WL 1743153, at *2 (Tex. App.—Dallas Apr. 16, 2015, no pet.) (mem. op.). Physical impairment evidence may include evidence of the need for physical therapy, the inability to participate in physical activities previously engaged in, and difficulty accomplishing tasks. *Bishop*, 553 S.W.3d at 668; *see also Goggans v. Ford*, No. 05-14-01239-CV, 2015 WL 8523302, at *5 (Tex. App.—

–11–

Dallas Dec, 9, 2015, pet. denied) (mem. op.) (physical impairment awards were supported by evidence plaintiff could not engage in activities she previously enjoyed and reduced her ability to interact with her children and other family members).

Like pain and suffering damages, physical impairment damages "are necessarily speculative and it is particularly within the jury's province to resolve these matters and determine those amounts." *Swearinger v. Guajardo*, No. 05-15-00202-CV, 2016 WL 4162785, at *2 (Tex. App.—Dallas Aug. 5, 2016, no pet.) (mem. op.). But to be compensable, the physical impairment's effect must be substantial and extend beyond the claimant's pain, suffering, mental anguish, lost wages, and diminished earning capacity. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003).

The following evidence bears on the physical impairment awards:

- Nunez testified that he was in a cast for more than six months and the recuperation took roughly another six months. At the time of trial he still did not "have a lot of strength," and he couldn't pick up or carry heavy items. He could no longer do construction work. At the time of trial he did "warehouse work," and he used his uninjured arm to do all the work.

- An August 17, 2014 medical record said that there were no restrictions on range of motion or weight bearing. But an August 21, 2014 progress note stated that the plan was for Nunez to avoid heavy lifting.

- An October 2014 occupational therapy discharge summary stated that Nunez was "[a]t least 40 percent but less than 60 percent impaired, limited or restricted" as to carrying, moving, and handling objects. The summary further said that Nunez's "Goal Status" was to reduce his impairment to a range of 20 to 40 percent and that one long term goal was to become "[i]ndependent with home exercise program."

- As appellants observe, medical records show that Nunez missed an "ortho appointment" sometime before August 8, 2014. He also requested to discontinue his occupational therapy early without meeting his goals.

- A record from an October 30, 2014 doctor visit recited that Nunez's plan included "[w]eight bearing as tolerated."

The evidence was sufficient to establish that Nunez experienced some physical impairment. He was in a cast for some time and required physical therapy. His medical records

–12–

reflected that he suffered some impairment and that his goal status was to reduce his impairment. He testified that he was still limited in the amount of weight he could hold and carry with his injured arm. And he testified that he could no longer do construction work and was doing warehouse work using his left arm. The factfinder could reasonably infer that Nunez suffered a substantial limitation on his ability to do physical tasks that he had done before.

Although appellants argue that Nunez failed to mitigate his damages by failing to report for all doctor visits and failing to complete the recommended occupational therapy, the factfinder was entitled to weigh this evidence along with all the other evidence, such as the note that Nunez's long term goal was to become independent with a home exercise program. The amount to be awarded was a matter for the trial court as factfinder, and on this record we cannot conclude that the amounts awarded for past and future physical impairment were unreasonably large. *Cf. Bishop*, 553 S.W.3d at 667–69 & n.6 (affirming awards of $175,000 for past physical impairment and $250,000 for future physical impairment); *Day*, 2015 WL 1743153, at *2–4 (affirming award of $65,000 for future physical impairment).

In a footnote, appellants also assert that the physical impairment awards "appear[] impermissibly duplicative" of the pain and suffering awards. They give no reason for assuming the trial court erroneously gave Nunez a double recovery except the similarity between the amounts awarded. We conclude that appellants have not shown error. *See Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987) (appellant bears the burden to show error).

### 4. Medical Expenses

The trial court awarded Nunez $32,624.72 for past medical expenses. We hold that the evidence supporting this award was legally and factually sufficient.

Appellants' legal sufficiency challenge relies on Civil Practice and Remedies Code § 41.0105, which provides that "recovery of medical or health care expenses incurred is limited to

the amount actually paid or incurred by or on behalf of the claimant." CIV. PRAC. § 41.0105. The supreme court has held that § 41.0105 limits recovery "to expenses that the [health care] provider has a legal right to be paid." *Haygood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2011). Appellants assert that Nunez presented no evidence that he actually paid or is legally obligated to pay $32,624.72 to his health care providers.

We disagree with appellants. The exhibits admitted at trial include three relevant affidavits: one from Children's Medical Center of Dallas, one from Parkland Health & Hospital System, and one from UT Southwestern. They contain the following statements:

> The total amount paid for the services was $0.$^{00}$ and the amount currently unpaid, but which **Children's Medical Center of Dallas** has a right to be paid after any adjustments or credits is $2016.30.

> \* \* \*

> The amount currently unpaid but which Parkland Health & Hospital System has a right to be paid after any adjustments or credits is $30,187.42.

> \* \* \*

> The total amount paid for the service was $0 and the amount currently unpaid by [sic] which **UT Southwestern** has a right to be paid after any adjustment or credits is $421.00.

Each affidavit is supported with billing records. The affidavits satisfy *Haygood* by reciting in each instance that the health care provider has a right to be paid the listed amount. And the figures stated in the affidavits add up to the amount the trial court awarded. Appellants do not address the affidavits, and they cite no controverting evidence.

We reject appellants' challenge.

### 5.    Conclusion

We overrule appellants' third and fourth issues as to the damages findings for pain and suffering, physical impairment, and past medical expenses. We need not address those issues as to the disfigurement findings, which we address below under issue five.

**E.      Issue Five:  Did the trial court err by awarding Nunez disfigurement damages without pleadings to support the award?**

In their fifth issue, appellants argue that the trial court erred by (i) ruling that Nunez's disfigurement damages were tried by consent and (ii) awarding disfigurement damages without pleadings to support them.  We agree with appellants for the following reasons.

**1.      Relevant Facts**

Nunez's live petition did not request disfigurement damages.  The petition contained only the following damages allegations:

> . . . Plaintiff suffered severe overwhelming injuries to his right elbow, including conscious mental and physical torment.  Plaintiff has suffered injuries and specifically sues for the following legal damages:
>
>  a.      Medical expenses in the past and future;
>
>  b.      Physical pain and mental anguish in the past and future; and
>
>  c.      Physical impairment in the past and future;  [sic]

During closing argument Nunez's lawyer requested $500,000 in disfigurement damages. Although appellant did not object at that time, the record shows that the trial court was made aware of this issue as it included the following ruling in its findings of fact and conclusions of law:

> While not plead, the issue of the disfigurement of Plaintiff David Nuñez was tried by consent because Plaintiff's counsel asked questions about Plaintiff's scarring, to which Defendant[s'] counsel did not object, and the evidence of scarring was not relevant to any plead issue.

Thus, error was preserved.  *See* TEX. R. APP. P. 33.1(a).

**2.      Applicable Law**

When a party's pleading specifically itemizes the damages elements he seeks to recover, his recovery is limited to those damages.  *See Weingartens, Inc. v. Price*, 461 S.W.2d 260, 263 (Tex. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.) (plaintiff who pled for damages for medical expenses, pain and anguish, and loss of services could not recover loss of earnings and earning capacity); *see also Dallas Ry. & Terminal Co. v. Van Gilder*, 301 S.W.2d 724, 729 (Tex.

App.—Dallas 1957, writ ref'd n.r.e.) ("Appellee's pleadings do not allege future pain and suffering, so we think it was error to include future pain and suffering in the damage issue.").

Trial by consent can cure a pleading defect. *See* Tex. R. Civ. P. 67. An unpled issue may be deemed tried by consent when evidence about the issue is developed under circumstances indicating both parties understood the issue was in the case and the opposing party did not make an appropriate objection. *See Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied); *see also Fiduciary Mortg. Co. v. City Nat'l Bank of Irving*, 762 S.W.2d 196, 201 (Tex. App.—Dallas 1988, writ denied) ("Rule 67 concerning trial by consent applies where it clearly appears from the record as a whole that the parties tried out a controverted issue *and that the issue was fully developed*.") (emphasis added). An issue is not tried by consent merely because evidence regarding it is admitted. *Bos v. Smith*, No. 16-0341, 2018 WL 2749714, at *10 (Tex. June 8, 2018). "We must examine the record not for evidence of the issue, but rather for evidence of *trial* of the issue." *Id.* (footnote omitted). If evidence is relevant to pled issues as well as unpled issues, there is no trial by consent because the evidence would not be calculated to draw an objection. *Id.*

Our standard of review for a ruling that an unpled issue was tried by consent is abuse of discretion. *See Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 495 (Tex. App.—Dallas 2010, pet. denied) ("The trial court has broad discretion in determining whether an unpleaded issue was tried by consent."). However, "although that discretion is to be exercised liberally in favor of justice, trial by consent is the exception, not the rule, and should not be inferred in doubtful cases." *Id.*

### 3. Applying the Law to the Facts

Appellants are correct that Nunez did not request disfigurement damages in his live pleading. Accordingly, the disfigurement damages awards cannot stand unless the trial court acted

within its discretion by ruling that disfigurement damages were tried by consent. *See Weingartens, Inc.*, 461 S.W.2d at 263; *see also Dallas Ry. & Terminal Co.*, 301 S.W.2d at 729. On this record, we hold that the trial court abused its discretion.

"Disfigurement has been defined as that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Goldman v. Torres*, 341 S.W.2d 154, 160 (Tex. 1960).

The trial court gave only one reason for ruling that disfigurement damages were tried by consent: "Plaintiff's counsel asked questions about Plaintiff's scarring, to which Defendant[s'] counsel did not object, and the evidence of scarring was not relevant to any plead issue." This is the passage to which the court is referring:

Q.      What parts of your body were in pain?

A.      In the arm.

Q.      Do you also have a scar from the operation to your arm today?

A.      Yes, of course.

Q.      Can you show the Court the scarring of the arm?

A.      It's right here (indicating).

The Court:            On the inside of the elbow? Can you see?

Defense counsel:     I can see it, Your Honor, thank you.

Q.      How long did it take for the elbow and the hand, the bones anyway, to heal?

A.      More than half a year.

Q.      Okay. And were you in pain during that time period?

A.      Yes, of course.

The questioning then turned to Nunez's physical impairment from the accident.

Appellants contend, and we agree, that this evidence about the scarring on Nunez's elbow was not relevant solely to disfigurement damages. Nunez had affirmatively pled for damages for

–17–

pain and physical impairment.  Evidence that Nunez had a significant scar from the surgery would provide circumstantial corroboration that his injury was severe enough to cause, and to still be causing, pain and physical impairment.  *Cf. Estrella v. State*, No. 01-16-00924-CR, 2018 WL 1056402, at *1 (Tex. App.—Houston [1st Dist.] Feb. 27, 2018, no pet.) (mem. op., not designated for publication) (witness testified that child's scar indicated he had suffered a painful burn).

Moreover, the short examination about Nunez's scar, coming in the middle of questions about his physical pain, and without any questions about the scar's unsightliness or any embarrassment it caused him, was not reasonably calculated to put appellants' lawyer on notice that disfigurement damages were in play and he needed to object.  This was not a case in which "the parties tried out a controverted [unpled] issue and . . . the issue was fully developed." *Fiduciary Mortg. Co.*, 762 S.W.2d at 201.  This is, at best, a doubtful case for applying trial by consent, and trial by consent should not be inferred in doubtful cases.  *See Hampden Corp.*, 331 S.W.3d at 495.  We hold that the trial court abused its discretion by ruling that disfigurement damages were tried by consent.

We sustain appellants' fifth issue.

### III.  CONCLUSION

For the foregoing reasons, we modify the trial court's judgment to eliminate the disfigurement damages, and we affirm the judgment as modified.


/Bill Whitehill/
_____
BILL WHITEHILL
JUSTICE

170631F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MAGDALENA GARCIA AND
GONZALO AVELAR A/K/A GONSALO
AVELAR A/K/A GUSTAVO AVELAR,
Appellants

No. 05-17-00631-CV       V.

DANIEL MACIAS NUNEZ, Appellee

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-02267.
Opinion delivered by Justice Whitehill.
Justices Stoddart and Boatright
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

We **DELETE** the third paragraph of the April 12, 2017 Amended Final Judgment
Nunc pro Tunc and replace it with the following:

> Plaintiff Daniel Nuñez have and recover from Defendants Gonzalo Avelar and
> Magdalena Garcia, jointly and severally, judgment in the sum of $212,624.72,
> together with prejudgment interest on the sum of $182,624.72 at the rate of 5.00%
> *per annum* accruing from February 26, 2016 through April 11, 2017, together with
> post-judgment interest on the sum of $212,624.72 at the rate of 5.00% *per annum*
> accruing from April 12, 2017 until the judgment is satisfied in full, together with
> taxable court costs.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered November 20, 2018.